[Crim. No. 5994. First Dist., Div. One. Dec. 14, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES WILLIAM POWERS, Defendant and Appellant.

Lincoln N. Mintz, under appointment by the Court of Appeal, and Mintz, Giller, Himmelman & Mintz for Defendant and Appellant.

Thomas C. Lynch, Attorney General, John T. Murphy and Michael J. Kelly, Deputy Attorneys General, for Plaintiff and Respondent.

ELKINGTON, J.—Defendant James W. Powers appeals from a judgment after trial by jury convicting him of escape by force and violence (Pen. Code, § 4532, subd. (b)), first degree robbery (Pen. Code, § 211), two counts of kidnaping (Pen. Code, § 207), assault with a deadly weapon (Pen. Code, § 245), and two counts of possession of a firearm while lawfully confined in jail (Pen. Code, § 4574). He was sentenced, pursuant to Penal Code, section 654, on one of the kidnaping charges and for escape and robbery.

The evidence disclosed that Powers, his codefendant Barnard, and one Terry, were prisoners in the Alameda County Jail. Powers had planned with Terry to escape and later had a discussion with Barnard about the escape. Powers, however, was moved to another part of the jail and had no further conversations with Terry and Barnard, who continued to discuss escape plans which did not include defendant. The escape was planned for September 19, 1965. On that day Barnard produced a .357 Magnum revolver and ordered a jailer toward the "dayroom" where Terry was located. Terry was released and the two men committed acts of violence and robbery against jail officials during the course of which another

revolver was secured from the jail's office. While Terry held the jail staff at bay Barnard left and a few minutes later returned with Powers.

A desperate attempt was then made by the three prisoners to escape from the jail building. During its course a jail official and jail engineer were forcibly taken with the prisoners. The lives of both men were threatened and Terry shot at the engineer twice. Both shots missed. Every effort to break out was met by locked doors or waiting police officers. The prisoners finally surrendered.

The extent of Powers' participation in the affair is indicated by the following evidence. During the course of the escape attempt Powers suggested that they break down a door and exit through a window, but Terry dissuaded him. At one point Terry pointed a gun at the jail engineer saying, "I am going to kill you." Powers discouraged him from doing this, saying, "He ain't did nothing." The engineer was then forced to turn over his keys to Powers who used them to open a door. A police car parked outside the door discouraged the prisoners from using that means of exit. Powers and Barnard then left the others saying they would try to start a car they had seen in a basement passage. Powers returned and directed the jail engineer to start the car which he could not, or at least did not, do. Powers, with Terry as a passenger, then started the car and drove toward an outside door. Terry opened the outside door and saw waiting police officers. He returned to the car. At this point Terry shouted that "there was a cop in the back," whereupon Powers leaned out and pointed a revolver at a policeman. As he was doing so the police started firing and Powers threw his gun on the hood of the car. The gun was the .357 Magnum revolver originally produced that day by Barnard. A search of Powers disclosed several sets of keys and four live rounds of .357 Magnum ammunition.

Powers took the witness stand and testified as follows: He had more than 20 discussions with Terry about escaping; they talked about various ways to get a gun into the jail; he probably told Terry there were guns in the jail's front office; at Terry's request he spent about three weeks trying to cut a hole in a thick laminated glass window of the "dayroom"; they talked about a gun coming through the window; the hole-piercing effort was stopped when he was transferred to a different "tank"; on the day of the escape when he first saw Barnard he "figured it was an escape"; no one told him to

get into the automobile from which he finally surrendered, or behind the driver's seat; when Terry said, " 'There's a cop behind,' . . . I just wheeled like that and I had the gun in my hand''; the gun was pointed right at the policeman; when searched after his arrest he had in his possession the jail keys, the jail elevator keys and a ring of keys that belonged to the jail engineer. He denied, however, that any .357 ammunition was found in the search. Asked what he was going to do if he got out he replied, "I never thought about that, because I never got that far. My point was getting out."

Power's defense was that he had not planned with his codefendant to escape on September 19, 1965, and that he participated in the acts giving rise to the charges against him only because he was coerced into doing so and was in fear of his life.

In his brief Powers admits that the evidence, viewed as it must be in the light most favorable to the prosecution, supports the several verdicts of the jury.

CONTENTION: *The trial court denied the defendant due process of law in that he was not allowed his constitutional right to represent himself at the trial of the cause.*

Powers, with his codefendant Barnard, was originally represented by the public defender with whom he had had trouble. Upon representation to the court that a conflict of interest existed, Mr. Wayne Hooper was appointed as Powers' counsel. On the morning that the case was called for trial, out of the presence of the jury,[1] Powers moved to discharge Mr. Hooper and to act as his own attorney. Codefendant Barnard then made a similar motion as to his attorney. Powers explained that a disagreement existed as to how the defense should be handled and that Mr. Hooper had not prepared his case properly. He said it was impossible for Mr. Hooper or any attorney in California to know what he wanted to say and that he felt he had to do his own talking and explaining to the court and to the jury. Although at times he spoke of a conspiracy involving Mr. Hooper to send him to prison, he admitted his attorney wanted to do a good job but that the attorney just couldn't represent him the way he wanted to be represented. He told the court, "You could give me whoever you considered the best attorney in the United States, . . . and he can't do it, Your Honor."

---

[1] All of the proceedings relating to Powers' representation and jail treatment which we shall hereafter discuss were taken out of the presence of the jury.

The court made a searching inquiry into Powers' competence to waive counsel and his ability to defend himself, and then took his motion under submission. At the start of the afternoon session Powers' motions were granted. As his own counsel he participated the remainder of the afternoon in the jury selection.

When court convened the following morning Powers made numerous complaints about his jail treatment to the judge. He said he was put into a white uniform with a red "P" embroidered on it and placed in a "cell within a tank" and that he had difficulty getting his legal work done. He complained also that he was getting half rations of food, that he was on restriction without cigarettes, and that the other inmates had instructions not to speak to him. The trial judge spoke personally to the jail captain and announced the following: The captain had stated Powers was not on restriction although requests that he be so placed had been made because of profanity directed at the jail officers; that except for the white uniform (which was worn by 15 jail inmates) and the additional cell security, he was treated, with regard to food and otherwise, as were the other prisoners; that the white uniform and cell security were warranted by Powers' "history in this situation" and by reports of other prisoners that Powers was planning another escape;[2] and that the complaint that other prisoners were ordered not to talk to him was entirely false. The judge stated he had nevertheless requested of the captain that Powers be treated equally with the others, "However, he tells me that if you continue to use nothing but profanity in addressing the officers, and refusing to cooperate, he doesn't know how he can run a jail any other way than by restricting you."

Powers continued to participate in the selection of the jury which was completed that day.

On the following morning which was the third day of the trial, Powers made a motion "for a continuance on the grounds that [if] the trial goes any further, it will be illegal for me to be tried in this court." He continued: "The reason I feel this way is not—I am not in the mental state called for by the law, and if Your Honor wishes to know what the law says, I will—the law requires that the accused must not only be physically present, but also mentally present, and a trial cannot be legally had where the defendant is without

---

[2] At the time of the alleged escape attempt, Powers was awaiting trial on an earlier escape charge.

mental realization of what is going on, and is in such condition as to enable him to confer with or assist counsel, which I am sure the court knows *I am my own counsel, unable to testify or understand the mechanics or the consequences of the Trial. People* versus *Berling,* 115 Cal.App. Second, 255 [*sic*] (251 P.2d 1077). Now, why I feel that I am not in a mental state to continue on with my trial is of the harassment, the embarrassment, the pure lack of consideration for myself as a human being by the officers in charge and the deputies in charge of the Alameda County Jail, sir, as the court is well aware of.'' He concluded by stating, ''My motion is, sir, that until these are corrected, you cannot try me legally in this court.'' The motion appears not to have been ruled upon.

The judge stated that if Powers was so affected he needed an attorney which the court was ready to again appoint. Powers then requested an attorney, not for the courtroom, but instead to act as investigator or messenger. He offered to withdraw a previous affidavit indicating trouble with the public defender's office, and then asked that at least an investigator be appointed. These requests were refused.

Powers then stated, ''I have two things to do here, Your Honor. I am trying to decide which would be the best. I guess I will go under 133 [*sic*] of the Penal Code. I am asking to be removed from this courtroom, on the ground a fair and unpartial trial cannot be had here. I believe this would be called a change of venue from this county, also.'' He explained, ''The basis of my argument, Your Honor, you objected to my continuance, that *I am not capable of representing myself in the mental state I am* [*in*] *now,* and seeing as how I don't see where Your Honor is going to better my conditions, which I feel they should be, by talking to Captain Skiles, which you have already done, and nothing has been done about it—he's lied to you, which I have proven on one occasion—I tried to on another, but I was unable to do so— it's not going to improve, and if it doesn't improve, my mental state is going to get worse, and as it gets worse my defense gets worse, and I can't afford this. It's not too good right now.''

Powers then withdrew his motion for removal or change of venue saying, ''My mistake. I will withdraw the motion. It is improperly made.'' He continued, ''If this would be all right with the court, I will make another motion also, which was my alternative, if it pleases the court. . . . Every officer who is guilty of wilful inhumanity or oppression toward any pris-

oner under his care or in his custody, is punishable by fine not exceeding $2,000, or by removal from office.'' He then named 10 jail officials and asked that warrants issue for their arrest. No further court proceedings appear to have been taken that day and the trial was continued to the following Friday, two days later.

The following morning, however, the court called Powers and Mr. Hooper to the courtroom. The following proceedings there took place: ''THE COURT: Mr. Powers, I called you down today for this reason, that after your motion yesterday that you felt the treatment and harassment that you were being given up there made it so difficult for you, unnerved you to the extent that you felt that you couldn't be said to be mentally present here. Although I denied your motion, the court gave a good deal of thought to it over yesterday afternoon and evening, and further to your request which the court didn't rule on, that you be given someone who would be the equivalent of a messenger to go and see people in the army, look at the records, and to make contact with certain witnesses. I researched the law, and it is the court's opinion that there is no authority for the court to appoint anyone in that capacity; that perhaps this would be an expense that you could be reimbursed for, if you were to do it yourself, but that we have no authority. The court's only authority is to appoint a counsel, and I just came to the conclusion that all these things, and the other things you mentioned, and this harassment, is going to go on, because the court made an examination of the jail yesterday, and of the conditions under which you and Mr. Barnard are both detained, and the rules of the jail, that although things might be better in the last 24 hours, that it is still going to be somewhat of an inconvenience to you, and that you are not going to be treated the same as all the other inmates of the jail are. I feel we can't do anything else but appoint an attorney, and I have called Mr. Hooper, and asked him to come in here this morning with the purpose of reappointing him as counsel. Inasmuch as it is five minutes to 12:00 now, and we don't commence the actual trial until tomorrow morning at 10:00 o'clock, this would give him an opportunity to discuss matters further with you, and be able to proceed to trial tomorrow morning.''

The court discussed Powers' previous motion for a continuance which brought about the following discussion: ''DEFENDANT POWERS: I am withdrawing it, Your Honor, because I feel that the motion has been granted, because what I asked for

has been taken care of, so I will withdraw the motion. THE
COURT: Well, this just leads me to believe further that I have
got to appoint an attorney to represent you. *You have a
change of mind this way and that way, and you will be in
here making another motion tomorrow morning, and another
one in the afternoon, and we have to get on with the trial.* So,
the court is reappointing Mr. Hooper to represent you.
DEFENDANT POWERS: Well, at this time, Your Honor, I will
object to the counsel, to the appointing of Mr. Hooper. THE
COURT: I understand you would. DEFENDANT POWERS: I do not
feel, from discussions prior to this, that Mr. Hooper wants to
take my case the way I want him to take it. He will not do it,
and if he does it any other way I will be committing suicide
in the court, because I will be found guilty. THE COURT: *That
is just why I am appointing him, for that purpose, so you
have an attorney who can direct some type of a continuity of
trial, instead of just having, being hampered all the way
through here with interruptions, new motions, and where we
are spending half the day on motions, and having different
things presented, some of which admittedly are made improp-
erly, like the one yesterday withdrawn, and that you
withdrew yourself, and supposedly another one you made that
you have withdrawn today.* I just can't do it. We just have to
do this to protect your rights. You are entitled—DEFENDANT
POWERS: What capacity? THE COURT: You are entitled to be
represented by effective counsel. *You do have the right to
defend yourself*—DEFENDANT POWERS: I demand this right,
Your Honor. THE COURT:—*provided that you are competent
enough to give yourself effective counsel, and I don't believe
you are.* So I am reappointing Mr. Hooper, and he will con-
sult with you, and we will go ahead tomorrow morning at
10:00 o'clock, with him representing you. . . . DEFENDANT
POWERS: May the record show you are doing this above my
objection. THE COURT: Over your objections, that is correct.''
(Italics added.)

The trial proceeded with Mr. Hooper acting as attorney for
Powers.

■ The trial judge discharges a serious and weighty
responsibility in determining whether there is an intelligent
and competent waiver of the right to counsel by the accused.
(*Johnson* v. *Zerbst,* 304 U.S. 458, 465 [82 L.Ed. 1461, 1467, 58
S.Ct. 1019, 146 A.L.R. 357] ; *People* v. *Mattson,* 51 Cal.2d 777,
794 [336 P.2d 937] ; *People* v. *Shields,* 232 Cal.App.2d 716,
722 [43 Cal.Rptr. 188].) Before accepting such a waiver he is

duty bound to determine that it is competent, intelligent and complete (*People* v. *Carter,* 66 Cal.2d 666, 672 [58 Cal. Rptr. 614, 427 P.2d 214]; *People* v. *Kemp,* 55 Cal.2d 458, 463 [11 Cal.Rptr. 361, 359 P.2d 913]; *People* v. *Shields, supra; People* v. *Shroyer,* 203 Cal.App.2d 478, 482 [21 Cal.Rptr. 460]) and that the accused has an intelligent conception of the consequences of his act (*People* v. *Douglas,* 61 Cal.2d 430, 435 [38 Cal.Rptr. 884, 392 P.2d 964]; *In re Tedford,* 31 Cal. 2d 693, 695 [192 P.2d 3]). ■ The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the peculiar facts and circumstances surrounding that case. (*Johnson* v. *Zerbst, supra,* 304 U.S. 458, 464 [82 L.Ed. 1461, 1466]; *In re Johnson,* 62 Cal.2d 325, 335 [42 Cal.Rptr. 228, 398 P.2d 420].) A finding of such a waiver is not lightly to be made. (*Moore* v. *Michigan,* 355 U.S. 155, 161 [2 L.Ed.2d 167, 172, 78 S.Ct. 191]; *People* v. *Douglas, supra,* 61 Cal.2d 430, 435.) And the determination by the trial judge involves an exercise of discretion which, in the absence of a showing of abuse, will not be disturbed on appeal. (*People* v. *Carter, supra,* 66 Cal.2d 666, 672-673.)

■ We believe the action of the trial judge setting aside his previous determination that Powers had competently waived counsel was well within his discretion and proper.

The court initially had given thoughtful consideration to Powers' and Barnard's motions to dispense with counsel. He denied that of Barnard and with apparent reluctance granted that of Powers. As to Powers the court was then satisfied that he had knowledge of the consequences of his motion and that he had made a competent, intelligent and complete waiver of his right to counsel.

Two days later Powers represented to the court that he was *"unable to testify or understand the mechanics or the consequences of the trial"* and *"that I am not capable of representing myself in the mental state I am [in] now."* (Italics added.) He accompanied these statements with motions indicative of such a lack of understanding and capability. The court gave "a good deal of thought" to the problem that afternoon and evening. The defendant whom he had found competent to waive counsel now insisted he was incapable of representing himself and lacked understanding of the mechanics or consequences of the trial. These admissions and the surrounding circumstances convinced the court that its previous finding of Powers' competency no longer applied.

Clearly the court was not obliged under any constitutional compulsion to continue the trial with Powers acting as his own attorney. In pursuit of its duty to secure for Powers a fair trial the court acted reasonably and properly by setting aside the previous finding that Powers was competent to waive counsel and appointing an attorney to represent him.

In a situation somewhat analogous to the case before us, the court in *Stephenson* v. *State,* 4 Ohio App. 128, 129 [17 A.L.R. 270] stated: "It is quite evident that at the time of the trial the defendant was mentally incapable of comprehending the nature of his defense, . . . While defendant seems to have thought he was making a defense, still it was really no defense, and, realizing this fact, we think the judge should have stopped the trial of the case and appointed some counsel to defend, so that the trial might have properly carried on."

Additionally, the trial court could properly have found on the record before us that Powers' waiver of counsel was not in good faith, but was done with the intent to disrupt the orderly procedure of the trial. This probability seems strengthened when we note that although Powers and Barnard were represented by their respective counsel for several months during which time there were several court appearances, they waited until the morning the trial started before making their requests to represent themselves. With or without such intent the acts of Powers as his own counsel did, nevertheless, succeed in disrupting the conduct of the trial.

██ The California Supreme Court has stated that the right to counsel may not be used to subvert the orderly and efficient administration of justice (*People* v. *Thomas,* 58 Cal. 2d 121, 131 [23 Cal.Rptr. 161, 373 P.2d 97]) and that its utilization as a tool for dilatory purposes may not be permitted *People* v. *Adamson,* 34 Cal.2d 320, 332-333 [210 P.2d 13]; see also *People* v. *Douglas, supra,* 61 Cal.2d 430, 435; *People* v. *Thomas, supra,* at pp. 131-132; *People* v. *Lamb,* 133 Cal.App.2d 179, 185 [283 P.2d 126]). It is equally true that the right to represent oneself may not be used for such purposes.

The power and duty of the trial court in such a situation as presents itself here was well stated by the Illinois Supreme Court as follows: "[T]he defendant, upon the waiver of counsel, had the right to defend himself, *subject to the constant duty of the court to protect the judicial process from deterioration occasioned by improper or inadequate conduct of the defense.* ██ In such situation the court possesses

broad discretion in relation to the appointment of counsel for advisory or other limited purposes, *or to supersede the defendant in the conduct of the defense.* Continuous supervision of the trial is required in order to maintain proper judicial decorum, to the end that defendant may receive a fair trial.'' (Italics added.) (*People* v. *Burson,* 11 Ill.2d 360, 373 [143 N.E. 2d 239, 247].) *State* v. *White,* 86 N.J.Super. 410, 418-419 [207 A.2d 178, 183] states: ''The right of an accused to represent himself, with or without the assistance of counsel, is not so absolute that it must be recognized when to do so would disrupt the business of the court or jeopardize a fair trial of the issues.''

Powers seems to contend that having found him competent to waive counsel the trial court was powerless, even for cause, to change its finding. No authority is cited for this proposition and in this respect the question before us appears to be of first impression. ■ However, we believe it cannot be reasonably argued that a court because of an earlier decision, is bound to allow a defendant who is no longer competent to waive counsel or to represent himself, to continue his self-representation. Allowing one to so represent himself would violate the principles of fundamental fairness which must attend a criminal trial. (See *People* v. *Sarazzawski,* 27 Cal.2d 7, 11 [161 P.2d 934]; Witkin, Cal. Criminal Procedure (1963) § 762, p. 734.)

■ Powers urges that a distinction must be made between the right to waive counsel and competency to conduct a criminal defense. Such a distinction does exist but the two concepts are nevertheless closely interrelated. A determination of competency to waive counsel must necessarily embrace an assessment of a defendant's ability to conduct his own defense. Here Powers stated he was unable to understand the mechanics or consequences of the trial, and because of his mental state was incapable of representing himself. Such an admitted mental condition is compelling support of the trial court's determination that he was not capable of an intelligent and competent waiver of counsel.

*United States* v. *Denno,* 348 F.2d 12, 15, is heavily relied upon by Powers. That case holds ''The right of a defendant in a criminal case to act as his own lawyer is unqualified if invoked prior to the start of the trial.'' There the trial judge arbitrarily refused a defendant's request to appear in propria persona, without any inquiry as to his competency. The case cannot be considered as modifying the rule that a waiver of

counsel may not be accepted unless it be competent, intelligent and complete. (See *People* v. *Carter, supra,* 66 Cal.2d 666, 672.)

CONTENTION : *If in fact the court finds that the trial court acted properly in compelling defendant to accept the services of counsel, then defendant was denied the right to counsel.*

The record before us indicates that after the jury was impaneled the following proceedings occurred: ''MR. HOOPER: If the court please, may the record show that I am present in court as representing Mr. Powers at this time. May the record further show that I was not present when the jury was selected. I have discussed the fact that I was not present at the examination of the jurors, and their selection, and yesterday afternoon I visited Mr. Powers in the county jail and discussed this matter with him, as to whether or not he would desire to make a motion that a new panel be brought in and a new jury picked. We discussed this for some length of time. I had already previously discussed it with Mr. Evans [counsel for codefendant Barnard], who was satisfied as to this jury's ability to hear this case, and, accordingly, Mr. Powers has indicated to me he is satisfied with the jury, and does not see the need of my voir direing them and bringing in a new panel for a new selection of a jury, so, accordingly, at this time, I would ask Mr. Powers to agree that this is a statement of fact, and that we are ready to proceed with the present jury. Is that true? THE COURT: Is that correct, Mr. Powers? DEFENDANT POWERS: That is correct, Your Honor.''

It is apparent from the foregoing that no prejudice resulted from Powers' lack of counsel during the impanelment of the jury and that any claim of error resulting therefrom was waived. He and Mr. Hooper expressly declined a selection of a new jury and expressed satisfaction with that selected without counsel. A defendant may not under such circumstances take his chances with a jury and then, after an adverse verdict, claim error.

CONTENTION : *Prejudice attended the appointment of counsel which would not have occurred had defendant represented himself.*

Powers makes no contention that he was represented inadequately by Mr. Hooper; indeed in his brief he admits the representation was adequate. Our reading and consideration of the record confirms this appraisal.

He points out, however, a portion of Mr. Hooper's argu-

ment, which he says heightens his contention that he should have been permitted to represent himself. Mr. Hooper stated: "I submit to you, ladies and gentlemen, that we have here a situation where a boy is guilty of escaping from jail. I have never in all the time that I have been arguing cases ever got up before the jury and told the jury 'My client is guilty of a particular charge' but I am doing that at this time, whether he likes it or not, because he is guilty of escape." But he then argued that his own escape was the only crime of which Powers was guilty. This argument was in part successful, for the jury acquitted Powers of two counts of robbery perpetrated directly by Terry and Barnard and two counts of aiding and abetting in the escape of the others. At least as to these escape charges a conviction would have been supported by the evidence.

■ "In the heat of a trial, defendant's counsel is best able to determine proper tactics in the light of the jury's apparent reaction to the proceedings. Except in rare cases an appellate court should not attempt to second-guess trial counsel." (*People* v. *Brooks,* 64 Cal.2d 130, 140 [48 Cal.Rptr. 879, 410 P.2d 383].) In the light of the clear evidence, including Powers' own testimony as to his escape, Mr. Hooper could reasonably have concluded that any contrary contention to the jury would tend to destroy the force of his entire argument.

Nowhere, either in the record or in his brief on appeal, does Powers suggest that had he represented himself, a stronger or different defense would or could have been offered.

Proof of Powers' guilt was clear and convincing. We find no error, but if error there be, we declare a belief because of the conclusive evidence of his guilt, that such error was harmless beyond a reasonable doubt. (See *Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].)

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 8, 1968.