[No. A027817. First Dist., Div. Two. Jan. 27, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT L. BURNETT, Defendant and Appellant.

[No. A028806. First Dist., Div. Two. Jan. 27, 1987.]

In re ROBERT L. BURNETT on Habeas Corpus.

**COUNSEL**

Clifford Gardner, under appointment by the Court of Appeal, for Defendant and Appellant and Petitioner.

John K. Van de Kamp, Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.

---

## OPINION

**KLINE, P. J.**—This case pertains to the nature of the evidence a trial court must consider before determining whether a criminal defendant is competent to waive counsel and the standard by which that determination is to be made.

Appellant Robert L. Burnett was originally charged with four counts of fraudulent use of the credit card of another (Pen. Code, § 484f, subd. (2)) and one count of misdemeanor obstruction of a police officer. (Pen. Code, § 148.) The information also alleged he had suffered seven prior felony convictions within the meaning of Penal Code section 667.5, subdivision (b). On April 20, 1981, the trial court found appellant not guilty by reason of insanity and committed him to Atascadero State Hospital pursuant to Penal Code section 1026 "until restored to mental competence." Appellant's maximum commitment was not to exceed seven years and four months.

In May 1982, appellant filed an application under Penal Code section 1026.2 for restoration of sanity upon the ground that if released from the state hospital he "would no longer be a danger to the health and safety of others, including himself." (Pen. Code, § 1026.2, subd. (e).) A jury disagreed and the trial court ordered appellant returned to Atascadero. The order was subsequently affirmed by this court in an unpublished opinion.

The instant proceeding commenced when, a year after his first application, appellant again petitioned for release pursuant to Penal Code section 1026.2. This time appellant waived his right to counsel and elected to represent himself. The trial court inquired into appellant's knowledge of certain basic legal principles and advised him of the hazards of self-representation. However, the trial court did not require expert evidence regarding appellant's mental capacity to waive counsel and represent himself. At the actual trial, after appellant presented a single witness who had no knowledge of his mental capacity, the trial court granted the People's motion for a directed verdict and subsequently ordered him "returned to Atascadero State Hospital for further care and treatment."

We reverse on the grounds that the trial court failed to properly determine whether appellant should have been permitted to proceed to trial without counsel.

## I.

The fountainhead of the right we focus upon in this case is, of course, *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525], in which the Supreme Court held that a defendant in a state criminal proceeding has a federal constitutional right to represent himself when he voluntarily and intelligently elects to do so.

Applying *Faretta,* the California Supreme Court has stated that "when a motion to proceed *pro se* is timely interposed, a trial court must permit a defendant to represent himself upon ascertaining that he has voluntarily and intelligently elected to do so, irrespective of how unwise such a choice might appear to be." (*People* v. *Windham* (1977) 19 Cal.3d 121, 128 [137 Cal.Rptr. 8, 560 P.2d 1187], cert. den., 434 U.S. 848 [54 L.Ed.2d 116, 98 S.Ct. 157].) The manner in which a trial court should make the necessary ascertainment was first explored in *People* v. *Lopez* (1977) 71 Cal.App.3d 568 [138 Cal.Rptr. 36]. Writing for the court in *Lopez,* Presiding Justice Gardner divided the judicial enterprise into three general categories. "First, it is necessary, as *Faretta* says, that the defendant 'be made aware of the dangers and disadvantages of self-representation.' . . . Second, . . . it would certainly be advisable to make some inquiry into his intellectual capacity to make this so-called 'intelligent decision.' [and] . . . Third, he should definitely be made aware that in spite of his best (or worst) efforts, he cannot afterwards claim inadequacy of representation." (*Id.,* at pp. 572-574.)

It is the second of these three "categories"—the inquiry into "intellectual capacity"—that most concerns us in the instant case.[1] With respect to this matter, the opinion in *Lopez* states, inter alia, as follows: "If there is any question in the court's mind as to a defendant's mental capacity it would appear obvious that a rather careful inquiry into that subject should be made —probably by way of a psychiatric examination. It would be a trifle embarrassing to get half way through a trial only to discover that a court has determined that a mentally deficient or seriously mentally ill person has been allowed to make a 'knowing and intelligent' decision to represent himself." (*Id.,* at p. 573.)

*People* v. *Teron* (1979) 23 Cal.3d 103 [151 Cal.Rptr. 633, 588 P.2d 773] [disapproved on other grounds in *People* v. *Chadd* (1981) 28 Cal.3d 739, 750, fn. 7 (170 Cal.Rptr. 798, 621 P.2d 837)] was the next important case to address the question whether psychiatric evidence is necessary in order to establish whether a person is mentally competent to represent himself. The defendant in that case argued that the trial court should not have permitted

---

[1] The trial court's admonition clearly satisfied the first and third requirements.

him to represent himself without first obtaining a psychiatric evaluation. The court agreed with the statement in *Lopez,* just quoted, that a psychiatric examination should "probably" be made " '[i]f there is any question in the court's mind as to a defendant's mental capacity ....' " (*Teron, supra,* at p. 114, quoting *Lopez, supra,* 71 Cal.App.3d at p. 573.) However, the court ruled that the trial court's failure to order a psychiatric examination in connection with the *Faretta* hearing was not an abuse of discretion because at the time of that hearing the evidence before the court did not include any discernible facts "which might create a question concerning the possibility of mental illness." (*Teron, supra,* at p. 114, fn. omitted.)

In *People* v. *Wolozon* (1982) 138 Cal.App.3d 456 [188 Cal.Rptr. 35], this court held that a defendant was not automatically deprived of the right to represent himself in a proceeding under Penal Code section 1026.5 to extend his commitment to a state hospital or other treatment facility. Even though the defendant might be insane in the sense that he is a danger to himself or others, he could still be competent to waive his right to an attorney. We indicated, however, that when such competence is in issue relevant psychiatric evidence should be considered. The determination of competence to waive counsel cannot be based solely on mental evaluations directed to the issue of whether the defendant constitutes a danger to others. (*Id.,* at p. 461.) Recognizing that a fundamental liberty interest is at stake in a 1026.5 proceeding, we held in *Wolozon* that "in a hearing to extend commitment under section 1026.5, the person committed to the state hospital has a right to confront and cross-examine psychiatrists and psychologists testifying against him. This ruling applies both to the case-in-chief *and any pretrial hearing concerned with the person's knowing and intelligent waiver of his right to counsel.*" (138 Cal.App.3d at p. 462, italics added.)

*Lopez, Teron,* and *Wolozon* essentially stand for the proposition that whenever a trial court has doubt as to the competence of a defendant to exercise the right of self-representation the court must undertake an exceedingly careful inquiry into the subject, ordinarily by ordering a psychiatric evaluation.

Such a rigorous pretrial inquiry is fully consistent with federal practice under the Sixth Amendment. Thus, for example, in *Von Moltke* v. *Gillies* (1948) 332 U.S. 708 [92 L.Ed. 309, 68 S.Ct. 316], Justice Black declared that a judge inquiring into the validity of a defendant's waiver of counsel "must investigate as long and as thoroughly as the circumstances of the case before him demand. ... A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered. [¶] ... [A] mere routine inquiry—the asking of

several standard questions followed by the signing of a standard written waiver of counsel—may leave a judge entirely unaware of the facts essential to an informed decision that an accused has executed a valid waiver of his right to counsel." (*Id.,* at pp. 723-724 [92 L.Ed. at p. 321]; accord, *Johnson* v. *Zerbst* (1938) 304 U.S. 458, 464 [82 L.Ed. 1461, 1466, 58 S.Ct. 1019, 146 A.L.R. 357]; *Westbrook* v. *Arizona* (1966) 384 U.S. 150, 151 [16 L.Ed.2d 429, 430, 86 S.Ct. 1320]; see also, *Pate* v. *Robinson* (1966) 383 U.S. 375, 385-386 [15 L.Ed.2d 815, 822-823, 86 S.Ct. 836].) With this principle in mind we turn to the case before us.

 In determining that appellant was mentally competent to waive counsel and represent himself, the trial court considered only the behavior of appellant at several pretrial hearings and the arguments of counsel. The failure of the court to obtain a psychiatric evaluation or any other independent evidence bearing upon appellant's mental capacity must be deemed to show either that the court never doubted appellant's mental capacity—which seems to us inexplicable in light of appellant's behavior—or that it overcame such doubt as it may initially have entertained without the benefit of psychiatric evidence.

Entirely apart from the fact appellant was and for several years had been confined in a state mental facility, the two very brief hearings at which his competence to waive counsel was considered provided ample reason to question his mental competence to waive his Sixth Amendment right to counsel. Appellant's frequent incoherence, his admission that he wanted to represent himself even though "I know I'm not cap — I—capable [*sic*]," his statements that he had been working for the United States Department of Justice, that a "Senate Subcommittee" present "right here in this courtroom" had "hooked me up with the mafia," and his suggestion he was earlier denied restoration to sanity because "[the sheriff's] deputies took out ladies on the jury" all provide a basis upon which to suspect appellant may have lacked the mental competence to waive counsel. Statements of the deputy public defender initially representing appellant independently provide grounds for such doubt. In an attempt to explain what the trial court described as appellant's "unintelligent sentences," counsel stated that appellant "has a speech disorder which is a result of the medication and organic brain damage."[2]

---

[2]Notwithstanding appellant's history of mental illness and bizarre conduct at the pretrial hearings, the deputy public defender stated to the court that "I believe Mr. Burnett is competent to waive counsel at this time." This representation, which in the context of the record is startling, can only be explained by the fact that, as the trial judge observed, appellant and the deputy public defender "do not see eye to eye, and [appellant has] lost confidence in her." The deputy public defender's attitude is summed up in her statement that "I sort of feel like he should represent himself if he doesn't want me to represent him. He often does change his mind when he starts representing himself; he often changes his mind and decides he wants

Counsel also disclosed that in an earlier proceeding at which she represented appellant he wanted to call various public figures, including the governor, because "[h]e seemed interested to use the case as a forum, I believe, a delusional case. [He claimed] [s]omebody implanted something in his brain, transmitting messages and making him do things, et cetera."

Finally, it must be remembered that the instant proceeding is one in which appellant is seeking the *restoration* of his sanity. The fact that he was still suffering under a judgment declaring him insane in and of itself provided reason to doubt appellant's ability to waive counsel voluntarily and intelligently. ■ We are aware that the Penal Code uses the words "insane," "insanity," and "mental competence" in different senses, and that "[t]he insanity which demands that a person shall be confined in a state hospital is not necessarily the same insanity which bars the prosecution of that person for the commission of a felony" (*People* v. *Field* (1951) 108 Cal.App.2d 496, 500 [238 P.2d 1052]) or renders him incompetent to waive counsel. However, since the standard for determining competence to stand trial is lower than the standard for determining competence to waive counsel, the fact that a person has been found mentally competent to stand trial with the assistance of counsel (or, as here, possesses a statutory right to participate in a judicial hearing on the question whether his sanity should be restored), therefore does not necessarily mean he or she is competent to waive the right to counsel and proceed to trial unassisted.[3] (*Westbrook* v. *Arizona, supra,* 384 U.S. 150; *Evans* v. *Raines* (9th Cir. 1983) 705 F.2d 1479, 1480; *United States* ex rel. *Konigsberg* v. *Vincent* (2d Cir. 1975) 526 F.2d 131, 133, cert. den. 426 U.S. 937 [49 L.Ed.2d 388, 96 S.Ct. 2652]; Felthous, *Competency to Waive Counsel: A Step Beyond Competency to Stand Trial* (Winter 1979) J. Psychiatry & L., p. 471.)

---

me after all." Appellant's repudiation of his attorney on the basis of her unsuccessful past representation and attitude about the case sheds no light on his competence to waive the constitutional right to counsel; nor, of course, does counsel's reaction to her rejection. The awkward position in which counsel in this case was placed underscores the need for independent evidence of competency to waive counsel where there is reason to doubt such competency.

[3]In the Ninth Circuit a finding of mental competence to stand trial also does not necessarily mean that the accused is competent to plead guilty. In *Sieling* v. *Eyman* (9th Cir. 1973) 478 F.2d 211, it was held that a hearing is required to determine the defendant's ability to plead guilty "[w]here the question of a defendant's lack of mental capacity lurks in the background." (*Id.,* at p. 214.) *Sieling* adopted the dissent of Justice Hufstedler in the earlier case of *Schoeller* v. *Dunbar* (9th Cir. 1970) 423 F.2d 1183, cert. den. 400 U.S. 834 [27 L.Ed.2d 66, 91 S.Ct. 69], in which she stated that "[a] defendant is not competent to plead guilty if mental illness has substantially impaired his ability to make a reasoned choice among the alternatives presented to him and to understand the nature of the consequences of his plea." (*Id.,* at p. 1194; compare *Allard* v. *Helgemoe* (1st Cir. 1978) 572 F.2d 1, cert. den. 439 U.S. 858 [58 L.Ed.2d 166, 99 S.Ct. 175].)

 The state and federal cases just briefly assayed lead us to conclude that where a trial court's doubt about a person's mental competence to waive counsel is based upon a history of mental illness or irrational behavior directly observed in the courtroom, or any other discernible facts "which would give rise to any doubt respecting defendant's mental capacity" (*Teron, supra,* 23 Cal.3d at p. 114, see also *Pate v. Robinson, supra,* 383 U.S. at p. 385 [15 L.Ed.2d at p. 822]), the court cannot properly determine that such person is competent to exercise the right asserted without first obtaining psychiatric evidence. As has long been recognized by many trial courts (see, e.g., *People v. Solomos* (1978) 83 Cal.App.3d 945, 949 [148 Cal.Rptr. 248]; *People v. Salas* (1978) 77 Cal.App.3d 600, 604 [143 Cal.Rptr. 755]), psychiatric evidence is usually essential to an informed decision whether a person whose mental competence is genuinely in question can knowingly exercise the right of self-representation. This principle is in conformity with the criminal justice standards recently proposed by the Committee on Standards for Criminal Justice of the American Bar Association. The relevant standard provides that: "If, after explaining the availability of a lawyer and making sufficient inquiry of a defendant professing a desire to waive counsel and represent himself or herself, the trial judge has a good faith doubt of the mental competence of the defendant to waive counsel or to represent himself or herself the judge should order a pretrial mental evaluation of the defendant . . . ." (ABA Standing Com. on Assn. Standards for Criminal Justice, Proposed Criminal Justice Mental Health Standards, std. 7-5.3(c) (1984) p. 302.)[4]

 Where, as in the present case, the person whose competence is in question is confined in a mental facility pursuant to judicial decree and the state maintains that such confinement should continue or be extended because that person continues to suffer a mental disability (see Pen. Code, §§ 1026.2 and 1026.5), mental competence to waive counsel is in doubt as a matter of law and such a person cannot be found competent to represent himself or herself without judicial consideration of psychiatric evidence bearing upon the question.

The determination by the court below that appellant was competent to waive counsel, which was made without the benefit of any psychiatric evidence, was therefore error. Moreover, error of this sort "simply does not lend itself to review by any standard short of per se reversal." (*People v. Tyner* (1977) 76 Cal.App.3d 352, 356 [143 Cal.Rptr. 52]; *People v. Freeman*

---

[4]With respect to the procedures by which such mental evaluations should be made, see ABA Standing Committee on Association Standards, Proposed Criminal Justice Mental Health Standards, *supra,* part IV, pages 181-240. See also, Gutheil and Applebaum, Clinical Handbook of Psychiatry and the Law (1982); Grisso, Evaluating Competencies: Forensic Assessments and Instruments (1986).

(1977) 76 Cal.App.3d 302, 308-310 [142 Cal.Rptr. 806]; see also, *Bittaker v. Enomoto* (9th Cir. 1978) 587 F.2d 400, cert. den. 441 U.S. 913 [60 L.Ed.2d 386, 995 S.Ct. 2013].)

## II.

Psychiatric evidence of an accused's competence to waive counsel is of little use unless the psychiatrist or licensed psychologist who provides such evidence and the trial judge for whom it is provided understand and adhere to the same standard for measuring competence. Identification of the proper standard has received remarkably little attention in the law and legal literature.

Several cases interpret *Faretta* to mean that competence to waive counsel is a separate issue from competence to represent oneself ably, and that the latter issue is wholly irrelevant to the necessary judicial determination. For example, *Curry* v. *Superior Court* (1977) 75 Cal.App.3d 221, 226-227 [141 Cal.Rptr. 884], holds that "the sole issue to be determined in a *Faretta* hearing is whether the defendant has the mental capacity to waive his constitutional right to counsel with a realization of the probable risks and consequences of his action. Whether or not a defendant is competent to act as his own lawyer is irrelevant." (75 Cal.App.3d at pp. 226-227; to the same effect, see *People* v. *Zatko* (1978) 80 Cal.App.3d 534, 544-545 [145 Cal.Rptr. 643], and *People* v. *Miller* (1980) 110 Cal.App.3d 327, 332-333, and fn. 6 [167 Cal.Rptr. 816].)

Other cases interpreting *Faretta* indicate that, though competent to stand trial, an accused is not competent to waive the right to counsel and proceed to trial unassisted unless *in addition* to realizing the probable risks and consequences of his action he also possesses the mental ability to present a rudimentary defense, keeping in mind, of course, that technical legal knowledge is not required. (*Faretta* v. *California, supra,* 422 U.S. at p. 836 [45 L.Ed.2d at p. 582]; *People* v. *Freeman, supra,* 76 Cal.App.3d 302, 307.) Thus, for example, in *People* v. *Lopez, supra,* 71 Cal.App.3d 568, Justice Gardner mandated inquiry during the *Faretta* hearing into, among other things, the defendant's "education and familiarity with legal procedures. For example, can he read and write? If not, how does he propose to handle such items as written exhibits and instructions." (*Id.,* at p. 573.) Justice Gardner also urged trial judges to inquire whether the defendant understands "the nature of the proceedings, the possible outcome, possible defenses and possible punishments." (*Ibid.*) Questions such as these are designed to determine whether the defendant has the mental ability to present a defense. Thus, *Lopez* recognizes that there is a relationship between a defendant's ability to represent himself and his appreciation of the probable risks and conse-

quences of his waiver of counsel. (See *People* v. *Kurbegovic* (1982) 138 Cal.App.3d 731, 756, fn. 22 [188 Cal.Rptr. 268]; *People* v. *Salas, supra,* 77 Cal.App.3d 600, 604-605, and fn. 2; *People* v. *Powers* (1967) 256 Cal.App.2d 904, 915 [64 Cal.Rptr. 450].)

The principle that the ability to waive counsel must be deemed to embody some minimal ability to present a personal defense emerges most clearly from several opinions of the United States Supreme Court. For example, in *Adams* v. *United States* ex rel. *McCann* (1942) 317 U.S. 269 [87 L.Ed. 268, 63 S.Ct. 236, 143, A.L.R. 435], which was heavily relied upon in *Faretta,* the court pointed out that "evidence and truth are of no avail unless they can be adequately presented. Essential fairness is lacking if an accused cannot put his case effectively in court." (*Id.,* at p. 279 [87 L.Ed. at p. 275].) In *Massey* v. *Moore* (1954) 348 U.S. 105 [99 L.Ed. 135, 75 S.Ct. 145], the court noted that a defendant may be capable of standing trial "and yet lack the capacity to stand trial without benefit of counsel." (*Id.,* at p. 108 [99 L.Ed. at p. 138].) As stated by the court : "No trial can be fair that leaves the defense to a man who is insane, unaided by counsel, and who by reason of his mental condition stands helpless and alone before the court .... Any defense is hopelessly beyond reach for an accused who is insane. He stands convicted on a charge which he could not contest and yet for which he may well have had a complete defense." (*Id.,* at pp. 108-109 [99 L.Ed. at p. 138].)

Admittedly, *Massey* and many of the other federal cases which include within the definition of competence to waive counsel the ability to present an elementary defense were decided prior to *Faretta.* Though some courts have wondered whether such cases survive *Faretta* (see, e.g., *People* v. *Kurbegovic, supra,* 138 Cal.App.3d at p. 756), the Supreme Court has never indicated they do not. Indeed, some of these cases — most notably *Johnson* v. *Zerbst, supra,* 304 U.S. 458 and *Adams* v. *United States* ex rel. *McCann, supra,* 317 U.S. 269 — were relied upon in and in that manner reaffirmed by *Faretta.* (See e.g., *Faretta, supra,* 422 U.S. at p. 835 [45 L.Ed.2d at pp. 581-582].) Moreover, nothing in *Faretta* indicates that if the defendant in that case had not been minimally "literate, competent, and understanding" (*Faretta, supra,* 422 U.S. at p. 835 [45 L.Ed.2d at p. 582]) he would have been deemed able to " 'competently and intelligently waive his constitutional right to assistance of counsel.' " (*Id.,* at p. 814 [45 L.Ed.2d at p. 570], quoting *Adams* v. *United States* ex rel. *McCann, supra,* 317 U.S. at p. 275 [87 L.Ed. at p. 273]; *People* v. *Teron, supra,* 23 Cal.3d at p. 113,; *People* v. *Jackson* (1978) 88 Cal.App.3d 490, 496-497 [151 Cal.Rptr. 688]; *People* v. *Dale* (1978) 78 Cal.App.3d 722, 730 [144 Cal.Rptr. 388], cert. den. 439 U.S. 937 [58 L.Ed.2d 329, 99 S.Ct. 327]; *Thomas* v. *Superior Court* (1976) 54 Cal.App.3d 1054, 1058-1059 [126 Cal.Rptr. 830].) Imposition of this minimal requirement is in keeping with the central idea of *Faretta,*

which acknowledged the constitutional right of self-representation out of " 'that respect for the individual which is the lifeblood of the law.' "[5] (*Faretta, supra,* at p. 834 [45 L.Ed.2d at p. 581], quoting *Illinois* v. *Allen* (1970) 397 U.S. 337, 350-351 [25 L.Ed.2d 353, 363, 905 S.Ct. 1057], conc. opn. of Brennan, J.) Where, though competent to stand trial, the individual in question is so mentally deficient or physically debilitated that he is unable to defend himself, it cannot show respect to permit him to try. It is demeaning to such a person and makes a mockery of justice for trial judges to countenance the charade that would inevitably arise in some cases if competence to waive counsel were not deemed to include the ability to at least rationally conceive and coherently present a bare bones defense. The long-standing principle that "[a] determination of competency to waive counsel must necessarily embrace an assessment of a defendant's ability to conduct his own defense" (*People* v. *Powers, supra,* 256 Cal.App.2d 904, 915), though certainly affected by the holding in *Faretta,* has not been wholly undone by the decision in that case; otherwise the state would be able to prosecute defenseless persons and public confidence that fairness dominates the criminal justice system, which is essential to the maintenance of that system, would be undermined.

In short, the distinction between competence to waive counsel gauged by whether the accused realizes "the probable risks and consequences," and competence measured by the ability to actually represent oneself cannot be fully maintained, for there is a threshold of competence to present a defense below which one cannot genuinely realize the risk of doing so. (Cf., *People* v. *Powers, supra,* 256 Cal.App.2d 904, 915 ["a distinction ... between the right to waive counsel and competency to conduct a criminal defense ... does exist but the two concepts are nevertheless closely interrelated."].) If he truly desires to establish his innocence, a person wholly unable to defend himself who nonetheless attempts to do so does not understand the nature and consequences of his act. Realization of the risk of self-representation necessarily involves an element of sober self-examination. A defendant who does not appreciate the extent of his own disability cannot be fully aware of the risk of self-representation where the disability significantly impairs his capacity to function in a courtroom.

---

[5]Cases decided by the United States Supreme Court subsequent to *Faretta* indicate that the law's respect for the individual does not always compel judicial deference to the reasonable preferences of a criminally accused person regarding important aspects of his own defense. (*Jones* v. *Barnes* (1983) 463 U.S. 745 [77 L.Ed.2d 987, 103 S.Ct. 3308] [indigent defendant has no constitutional right to compel appointed counsel to press nonfrivolous issues requested by the client]; *Morris* v. *Slappy* (1983) 461 U.S. 1 [75 L.Ed.2d 610, 103 S.Ct. 1610] [the right to counsel does not require granting of a continuance so that the hospitalized public defender initially assigned the case, who had completed extensive trial preparation, could represent the defendant].)

*State* v. *Bauer* (1976) 310 Minn. 103 [245 N.W.2d 848], exemplifies the situation in which an accused's mental condition precludes realistic assessment of the need for assistance and the risk of waiving counsel. The defendant in that case was at trial deemed competent to waive counsel solely on the basis of a psychiatric opinion that he was competent to stand trial. In permitting the waiver, the trial court disregarded the objections of the public defender, who sought to distinguish competence to waive counsel from competence to stand trial. (*Id.,* at p. 859.) The Supreme Court of Minnesota reversed because, among other things, "the defendant's reason for wishing to dispense with defense counsel was his paranoid distrust of everyone connected with the judicial system" (*ibid.*), and because the defense he offered "was both irrational and not a legal defense." (*Id.,* at p. 860.) These measures of competence were proper considerations under *Faretta,* the court noted, because they "do[] not refer to *legal* ability but rather the *mental* ability to make the waiver." (*Id.,* at p. 859, fn. 13, italics in original.)

The inquiry into competence to waive counsel must, of course, guard against the danger that the accused's very desire to represent himself—which judges almost universally think exceedingly unwise—is itself treated as an indication that he may be mentally unfit. The unwisdom of a defendant's decision to represent himself is, as we know, beside the point. (*People* v. *Windham, supra,* 19 Cal.3d at p. 128.) ▮ Though waiver of a constitutional right by a person with seemingly limited mental ability must be strictly scrutinized (*Cooper* v. *Griffin* (5th Cir. 1972) 455 F.2d 1142, 1145-1146), such a right clearly cannot be conditioned simply on the intelligence level or good judgment of the person who seeks to exercise it. The incompetence that warrants denial of the constitutional right of self-representation must therefore consist of considerably more than unintelligence or foolhardiness and do far more than merely render the accused less effective than counsel.

It must be assumed that a defendant deemed competent to stand trial " 'has a rational as well as a factual understanding of the proceedings against him.' " (*Dusky* v. *United States* (1960) 362 U.S. 402 [4 L.Ed.2d 824, 825, 80 S.Ct. 788].)[6] However, it is one thing to be able "to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner," which is the legislative definition of competence to

---

[6]For a more detailed judicial description of the characteristics of a defendant competent to stand trial, see *Wieter* v. *Settle* (W.D.Mo. 1961) 193 F.Supp. 318, 321-322. See also *Morrow* v. *State* (1982) 293 Md.247 [443 A.2d 108]; *State* v. *Austad* (1982) 197 Mont. 70 [641 P.2d 1373]; *State* v. *Heger* (N.D. 1982) 326 N.W.2d 855. For analysis of those areas of functioning deemed by psychiatrists most relevant to a determination of competency to stand trial see McGarry et al., Competency to Stand Trial and Mental Illness, National Institute of Mental Health (1973); Robey, Criteria for Competency to Stand Trial: A Checklist for Psychiatrists (1965) 122 Am.J. Psychiatry 616, 623; Gutheil and Appelbaum, Clinical Handbook of Psychiatry and the Law, *supra,* pages 258-260.

stand trial in this state,[7] and quite another to participate in such proceedings without the assistance of counsel.[8] (See Silten & Tullis, *Mental Competency in Criminal Proceedings* (1977) 28 Hastings L.J. 1053, 1068; Felthous, *Competency to Waive Counsel: A Step Beyond Competency to Stand Trial, supra,* J. Psychiatry & L., at p. 474.)

Unfortunately, there is no easy way to establish competence to waive counsel. As Justice Frankfurter has stated, "[t]he task of judging the competence of a particular accused cannot be escaped by announcing delusively simple rules of trial procedure which judges must mechanically follow." (*Adams* v. *United States* ex rel. *McCann, supra,* 317 U.S. 269, 277 [87 L.Ed. at p. 274].) ■ In addition to an appreciation of the risks run by any accused person who exercises the right of self-representation, which is the threshold consideration, competence to waive counsel also includes an array of basic cognitive and communicative skills relating to the presentation of a defense to criminal charges. ■■■■■ Such skills are present where the accused: (1) possesses a reasonably accurate awareness of his situation, including not simply an appreciation of the charges against him and the range and nature of possible penalties, but also his own physical or mental infirmities, if any; (2) is able to understand and use relevant information rationally in order to fashion a response to the charges; and (3) can coherently communicate that response to the trier of fact.[9] (See ABA

---

[7]Penal Code section 1367 provides in material part that "[a] person cannot be tried or adjudged to punishment while such person is mentally incompetent. A defendant is mentally incompetent for purposes of this chapter if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner."

[8]We are aware, in this regard, that in *People* v. *Powell* (1986) 180 Cal.App.3d 469 [225 Cal.Rptr. 703], the majority concluded that a defendant could be mentally competent to waive counsel but incompetent to stand trial. (*Id.,* at pp. 481-483.) This conclusion—that an accused person can be incapable of assisting in his defense but capable of defending himself without assistance—which we think altogether unreasonable, goes far beyond the cases relied upon by the *Powell* majority and conflicts with other authority, most notably the opinion of the United States Supreme Court in *Westbrook* v. *Arizona, supra,* 384 U.S. 150. (See also, *Massey* v. *Moore, supra,* 348 U.S. 105, 108 [99 L.Ed. at p. 108]; *Evans* v. *Raines, supra,* 705 F.2d 1479, 1480; *United States* ex rel. *Konigsberg* v. *Vincent, supra,* 526 F.2d 131, 133; *People* v. *Wolozon, supra,* 138 Cal.App.3d 456, 461; *People* v. *Zatko, supra,* 80 Cal.App.3d 534, 543; see also *Commonwealth* v. *Wertheimer* (1984) 19 Mass. App. 930 [472 N.E.2d 266, 268], and cases from numerous jurisdictions there cited; Felthous, *Competency to Waive Counsel: A Step Beyond Competency to Stand Trial, supra,* J. Psychiatry & L., p. 471; Grisso, Evaluating Competencies: Forensic Assessments and Instruments, *supra,* at p. 64.)

[9]It deserves to be noted that there is no *necessary* relationship between a defendant's psychopathology and his ability to make a voluntary and intelligent waiver of the right to counsel. (See Note, *Incompetency to Stand Trial* (1967) 81 Harv. L.Rev. 454, 459-461; Geller & Lister, *The Process of Criminal Commitment for Pre-Trial Psychiatric Examination and Evaluation* (1978) 135 Am. J. Psychiatry 53, 58.) The law does not require that an individual be mentally ill in order to be deemed mentally incompetent to waive counsel (see *Dusky* v. *United States, supra,* 362 U.S. 402); neither does it say that a person who suffers a mental abnormality can

Standing Com. on Assn. Standards, Proposed Criminal Justice Mental Health Standards, std. 7-5.3(b), *supra,* p. 302; Gutheil & Applebaum, Clinical Handbook of Psychiatry and the Law, *supra,* pp. 215-219; *Else* v. *State* (Alaska 1976) 555 P.2d 1210, 1212 [" 'In order to prevent a perversion of the judicial process, the trial judge should first ascertain whether a [defendant seeking to waive counsel] is capable of presenting his allegations in a rational and coherent manner before allowing him to proceed *pro se.*' "]

The foregoing considerations have in practice been taken into account by trial courts in this state following the 1977 decision in *People* v. *Lopez, supra,* 71 Cal.App.3d 568. For example, in *People* v. *Salas, supra,* 77 Cal.App.3d 600, the trial court's denial of the defendant's petition to represent himself was affirmed because the record supported the court's determination "that defendant did not have the mental capacity to make an intelligent decision to represent himself." (*Id.,* at p. 605.) In support of this conclusion, the Court of Appeal set forth the trial judge's description of the psychiatric and other evidence he relied upon concerning the accused's ability to understand and participate in the proceedings. We quote that description in the margin below because it provides a rare illustration of the actual decision process employed by able trial judges.[10]

---

never be deemed competent to make such a waiver. (See Ennis & Emery, An American Civil Liberties Handbook, The Rights of Mental Patients (1978) at p. 101; Pizzi, *Competency to Stand Trial in Federal Courts: Conceptual and Constitutional Problems* (1977) 45 U.Chi. L.Rev. 21.)

It is true that California is among those states which have by statute required a finding of mental abnormality in order to establish incompetency *to stand trial* (Pen. Code, § 1367); however, as we have seen, competency to waive counsel is of a higher order than competency to stand trial. (*Westbrook* v. *Arizona, supra,* 384 U.S. 150; *United States* ex rel. *Konigsberg* v. *Vincent, supra,* 526 F.2d 131, 133.) In the absence of any legislative indication that incompetence to waive counsel must result from a mental abnormality we see no need to judicially impose such a limitation. In other states which require a finding of mental abnormality as a prerequisite for establishing incompetency to stand trial there is judicial precedent permitting a defendant to be found incompetent to waive counsel even though he does not suffer a mental abnormality. Thus, for example, the Arizona Supreme Court held in *State* v. *Doss* (1977) 116 Ariz. 156 [568 P.2d 1054], that a finding of mental abnormality is not essential in order to establish incompetence to waive counsel even though rule 11.1 of the Arizona Rules of Criminal Procedure, like California Penal Code section 1367, does require a mental abnormality in order to establish incompetence to stand trial. See also *People* v. *Lang* (1979) 76 Ill.2d 311 [391 N.E.2d 350], cert. den. sub nom. *Lang* v. *Illinois* (1979) 444 U.S. 954 [62 L.Ed.2d 326, 100 S.Ct. 433], and cert. den. *sub nom. DeVito* v. *Lang* (1980) 444 U.S. 1045 [62 L.Ed.2d 731, 100 S.Ct. 733]. (The states which require a finding of mental abnormality in order to establish incompetence to stand trial and those which do not are specified in Brakel, Parry & Weiner, The Mentally Disabled and the Law (American Bar Foundation 3d ed.) table 12.1, p. 744 et seq.)

[10]At the conclusion of the hearing on the defendant's mental capacity to make an intelligent decision to represent himself, the trial judge in *Salas* stated as follows: " 'The court does feel that the defendant has serious intellectual problems. I have noticed myself in my dealings with the defendant that even when a simple question is put to him, he tends to go off on a tangent.

The determination of competency to waive counsel, like the evaluation of all mental competencies, cannot achieve perfection because of the imprecision of the criteria and the difficulty inherent in any attempt to compass the human mind. (See Gould, The Mismeasure of Man (1981).) The test, in the final analysis, is one of fairness. ■ Where an accused is "unable to understand the mechanics or consequences of the trial, and because of his mental state [is] incapable of representing himself," he should not be permitted to relinquish counsel, because to do so "would violate the principles of fundamental fairness which must attend a criminal trial." (*People* v. *Powers, supra,* 256 Cal.App.2d 904, 915; see also, *Adams* v. *United States ex rel. McCann, supra,* 317 U.S. 269, 279 [87 L.Ed. at pp. 274-275]. A criminal proceeding that is manifestly unfair is not simply an affront to our concept of justice; as earlier noted, it also constitutes a denial of " 'that respect for the individual which is the lifeblood of the law.' " (*Faretta* v. *California, supra,* 422 U.S. at p. 834 [45 L.Ed.2d at p. 581], quoting *Illinois* v. *Allen, supra,* 397 U.S. 337, 350-351 [25 L.Ed.2d at p. 363], conc. opn. of Brennan, J.)

■ Because in the present case appellant's confinement in a state mental facility provided legal reason to doubt his competence to waive counsel at the time he was permitted to do so, and because psychiatric evidence relative to this question was not obtained, we are compelled to reverse the judgment and remand for another proceeding consistent with the views set forth in this opinion. In view of the result reached on appeal, the writ of habeas corpus is denied.

Rouse, J., and Smith, J., concurred.

---

[¶] And I notice what Dr. Harvey says about his mental activity being fragmented, and that is my conclusion also. I am impressed with Dr. Harvey's observations about the defendant's ability to handle even simple abstractions. [¶] I think the defendant has a mind that causes him to look for simplistic answers to things. I don't think the defendant has even a limited ability to understand the significance of waiving counsel, particularly for a person like himself who has a language problem. It is a huge reality to lawyers, but I don't think that the defendant understands five per cent of it. When we consider that a lawyer is a creature of words and his ability to function in a courtroom is absolutely dependent on his understanding everything that is said in a courtroom at all times, I can't help but being struck with what a radical decision it is that the defendant seeks to make. [¶] Now, I think the thing that Dr. Sheel puts his finger on of the defendant's paranoid personality, is one more thing that is getting in the way of the defendant making an intelligent decision about this matter. [¶] I think the defendant is being shoved in the direction of an unintelligent decision at least in part by his paranoia.' " (*Id.,* at p. 605, fn. 2.)