[No. E006118. Fourth Dist., Div. Two. May 23, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
STEWART MANAGO, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Parts 2, 4, and 5 are not published; they do not meet the standards for publication contained in *California Rules of Court*, rule 976.1.

## COUNSEL

Maureen J. Shanahan, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White and Richard B. Iglehart, Chief Assistant Attorneys General, Harley D. Mayfield, Assistant Attorney General, Robert M. Foster, David I. Friedenberg, Robert P. Whitlock and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HOLLENHORST, Acting P. J.**—A jury convicted Stewart Manago of residential burglary (Pen. Code, § 459), residential robbery (Pen. Code, § 211), and rape (Pen. Code, § 261, subd. (2)), during all of which he used a gun (Pen. Code, §§ 12022.5 and 12022.3). He was sentenced to prison and appeals contending his motions to represent himself and for mistrial were erroneously denied, an in camera hearing was improperly conducted, evidence was erroneously admitted and sentencing error occurred. We reject his contentions[1] and affirm.

### FACTS

Manago and a companion were waiting in front of the victim's apartment building when she returned from dropping her daughter off at work. Manago forced his way inside her apartment when she opened the door to let herself in. Holding a gun, he robbed her of $7 from her wallet. As he kept the victim prone on the floor, Manago called out to his companion, whom he referred to as "Cuz," to remove her microwave oven. Manago then took the victim upstairs, where he rummaged through her belongings, taking items of jewelry. After threatening to kill her other daughters who remained

---

[1] Despite this, we are moved to compliment appellate counsel for Manago on her brief. Therein, she adheres strictly to the letter of the law in form and is succinct and not unduly wordy in her analysis. It is unfortunate that appellants' briefs like hers are so rare.

in the home if she did not comply, he raped her. He then removed her TV and VCR and drove off with his companion.

### 1. *Self-representation*

Two days before trial began, Manago moved for substitution of counsel. It took Manago 10 full pages of trial transcript to explain to the court that his problem with his attorney was that the latter believed Manago would be convicted of all the charged offenses. When his motion was denied, Manago requested permission to represent himself, asking for a continuance of at least 30 days to prepare for trial.

The court ascertained that Manago had only gone as far as the seventh grade in school, although he took special education classes at the California Youth Authority (CYA). His reading skills were at an 8.9 grade level. He said he had done some reading while working in the law library at CYA. The court explained to Manago that he would be unable to represent himself in a professional manner because he lacked objectivity. The court also said Manago would be held to the same standards as an attorney and would not be given any breaks by the court or the prosecutor. The court explained that Manago's chances at trial would be substantially reduced by self-representation[2] and if convicted, he could not appeal on the grounds of incompetency of counsel. The court also inquired into Manago's knowledge of aspects of trial and the charges against him. Despite his expressions of displeasure with certain realities of self-representation, Manago said he understood them.

The court denied his request, stating: ". . . Mr. Manago['s] request to waive the right to the assistance of counsel and to represent himself is not knowingly and intelligently made. [¶] And that conclusion is supported by the observations as follows: Mr. Manago, by his own admissions, has only gone up in grade school to the 7th grade. He has taken some reading improvement courses or special education courses to improve his reading skills; however, those reading skills amount to the reading skill of a 9th grader. In the Court's view, when the Court was observing Mr. Manago answer the questions, it's the Court's belief that Mr. Manago has rather low verbal skills, he's not an articulate gentleman and it would in the Court's view be very, very difficult for Mr. Manago to question witnesses, to be able to intelligently question the jurors, to challenge the jurors for cause or to exercise peremptory challenges. There is some difficulty that Mr. Manago has in answering the Court's questions. Some of the questions I believe Mr.

---

[2] In fact, the court put it graphically, "[It would be] kind of like you[r] having a fight with Joe Lewis [*sic*] when he was in his prime[.] Do you understand how unbalanced the fight [would be]?"

Manago has never considered before. He has never represented himself in the past. He has no awareness of the elements of the offenses of which [the prosecutor] has to prove up beyond a reasonable doubt. [¶] And because of all those observations and in particular the Court's observations as to the way Mr. Manago answered the questions, his demeanor here in court, the Court believes it would be a miscarriage of justice to allow Mr. Manago to represent himself in this case. In essence, it would reduce the proceedings to a farce and a sham. And this Court cannot allow that to happen."

*Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525] held that the trial court may deny a motion for self-representation where the record shows that it was not knowingly and intelligently made. In *People* v. *Lopez* (1977) 71 Cal.App.3d 568, 573 [138 Cal.Rptr. 36], this court advised trial courts to "make some inquiry into [the requesting defendant's] intellectual capacity to make this so-called 'intelligent decision[,]' [such as asking about] [¶] [h]is education and familiarity with legal procedures. For example, can he read and write?"

In *People* v. *Burnett* (1987) 188 Cal.App.3d 1314 [234 Cal.Rptr. 67], the First District outlined the two schools of thought on *Faretta*'s knowing and intelligent requirement:

"Several cases interpret *Faretta* to mean that competence to waive counsel is a separate issue from competence to represent oneself ably, and that the latter issue is wholly irrelevant to the necessary judicial determination. . . . [¶] Other cases interpreting *Faretta* indicate that, though competent to stand trial, an accused is not competent to waive the right to counsel and proceed to trial unassisted unless *in addition* to realizing the probable risks and consequences of his action he also possesses *the mental ability to present a rudimentary defense, keeping in mind, of course, that technical legal knowledge is not required.*" (188 Cal.App.3d at p. 1323, italics in original and added.) *Burnett* went on to explain why it had come to accept this second school of thought, an analysis which we embrace here:

"The principle that the ability to waive counsel must be deemed to embody some minimal ability to present a personal defense emerges most clearly from several opinions of the United States Supreme Court. For example, in *Adams* v. *United States* ex rel. *McCann* (1942) 317 U.S. 269 . . . , which was heavily relied upon in *Faretta,* the court pointed out that 'evidence and truth are of no avail unless they can be adequately presented. Essential fairness is lacking if an accused cannot put his case effectively in court.' [Citation.] In *Massey* v. *Moore* (1954) 348 U.S. 105 . . . , the court noted that a defendant may be capable of standing trial 'and yet lack the capacity to stand trial without benefit of counsel.' [Citation.] As stated by

the court: 'No trial can be fair that leaves the defense to a man who is insane, unaided by counsel, and who by reason of his mental condition stands helpless and alone before the court . . . . Any defense is hopelessly beyond reach for an accused who is insane. He stands convicted on a charge which he could not contest and yet for which he may well have had a complete defense.' [Citation.]

"Admittedly, *Massey* and many of the other federal cases which include within the definition of competence to waive counsel the ability to present an elementary defense were decided prior to *Faretta*. Though some courts have wondered whether such cases survive *Faretta* (see, e.g., *People* v. *Kurbegovic* [1982] 138 Cal.App.3d [731] at p. 756 [188 Cal.Rptr. 268]), the Supreme Court has never indicated they do not. Indeed, some of these cases—most notably *Johnson* v. *Zerbst* [1938] 304 U.S. 458 and *Adams* v. *United States* ex rel. *McCann, supra*, 317 U.S. 269—were relied upon in and in that manner reaffirmed by *Faretta*. [Citation.] Moreover, nothing in *Faretta* indicates that if the defendant in that case had not been minimally 'literate, competent, and understanding' [citation] he would have been deemed able to ' "competently and intelligently waive his constitutional right to assistance of counsel." ' [Citations.] Imposition of this minimal requirement is in keeping with the central idea of *Faretta,* which acknowledged the constitutional right of self-representation out of ' "that respect for the individual which is the lifeblood of the law." ' [Fn. omitted, citations omitted.] Where, though competent to stand trial, the individual in question is so mentally deficient or physically debilitated that he is unable to defend himself, it cannot show respect to permit him to try. It is demeaning to such a person and makes a mockery of justice for trial judges to countenance the charade that would inevitably arise in some cases if competence to waive counsel were not deemed to include the ability to at least rationally conceive and coherently present a bare bones defense. The long-standing principle that '[a] determination of competency to waive counsel must necessarily embrace an assessment of a defendant's ability to conduct his own defense' [citation], though certainly affected by the holding in *Faretta,* has not been wholly undone by the decision in that case; otherwise the state would be able to prosecute defenseless persons and public confidence that fairness dominates the criminal justice system, which is essential to the maintenance of that system, would be undermined.

"In short, the distinction between competence to waive counsel gauged by whether the accused realizes 'the probable risks and consequences,' and competence measured by the ability to actually represent oneself cannot be fully maintained, for there is a threshold of competence to present a defense below which one cannot genuinely realize the risk of doing so. [Citation.] If he truly desires to establish his innocence, a person wholly unable to defend

himself who nonetheless attempts to do so does not understand the nature and consequences of his act. Realization of the risk of self-representation necessarily involves an element of sober self-examination. A defendant who does not appreciate the extent of his own disability cannot be fully aware of the risk of self-representation where the disability significantly impairs his capacity to function in a courtroom.

". . . . . . . . . . . . . . . . . . . .

". . . In addition to an appreciation of the risks run by any accused person who exercises the right of self-representation, which is the threshold consideration, competence to waive counsel also includes an array of basic cognitive and communicative skills relating to the presentation of a defense to criminal charges. Such skills are present where the accused: (1) possesses a reasonably accurate awareness of his situation, including not simply an appreciation of the charges against him and the range and nature of possible penalties, but also his own physical or mental infirmities, if any; (2) is able to understand and use relevant information rationally in order to fashion a response to the charges; and (3) *can coherently communicate that response to the trier of fact*. [Fn. omitted, citations omitted, italics added.]" (*People* v. *Burnett, supra,* 188 Cal.App.3d at pp. 1324-1325, 1327.)

While we, of course, recognize that *Burnett* involved a *mental* incapacity on the part of the defendant, its language is no less applicable to defendants who, for whatever reasons, are so undereducated and inarticulate that their trials would be reduced to a sham and a farce.

■ *Faretta* and its progeny condemned denial of a self-representation motion on the basis that defendant has never represented himself before and is unaware of the elements of the offenses with which he is charged, and to the extent the court relied upon these factors, it was incorrect. However, we cannot say that the court abused its discretion, that is, acted unreasonably, in finding that Manago's lack of education, poor reading ability, and obvious inability to effectively communicate his thoughts demonstrated that he did not "possess[] the . . . ability to present a rudimentary defense . . . ." (*People* v. *Burnett, supra,* 188 Cal.App.3d at p. 1323.) To hold otherwise would be to allow, as the trial court concluded, Manago's trial to become a mockery.

2.*

. . . . . . . . . . . . . . . . . . . .

---

* See footnote, *ante,* page 982.

### 3. *In Camera Hearing*

Manago subpoenaed his coparticipant in the crimes to testify in his behalf. This individual had already pled guilty to burglary for his role in the offenses, as part of a plea bargain. He had yet to be sentenced. Therefore, he was still entitled to claim his privilege against self-incrimination in connection with his possible testimony at this trial. (*People* v. *Kizzee* (1979) 94 Cal.App.3d 927 [156 Cal.Rptr. 784].) The coparticipant appeared in court with his attorney. The latter informed the court that he had advised his client not to testify. The court asked his counsel, "[D]o you wish to place something on the record in-camera [pursuant to] [¶] Evidence Code Section 915 . . . [¶] regarding that decision?" to which the latter answered in the affirmative. Manago's attorney then interposed the following objection to this procedure: ". . . [I] suppose I should just put on the record that I'm sure Mr. Manago wants me to object to this because he doesn't know what's going to go on and there's no way if I'm not present or he's not present [that] I can tell him what's going on. . . . [¶] And, obviously, because it denies him confrontation."[3] The trial court overruled Manago's objection. During the brief in camera hearing, counsel for the potential witness reviewed matters which fell within the attorney-client privilege.

 Manago now objects to being excluded from the hearing, contending that this violated his right to be present at trial under the California Constitution and Penal Code section 1043. Both parties go on at length in their briefs, quoting cases in which defense counsel was present at particular procedures, but the defendant was not. We find these cases inapplicable to the instant situation, where both Manago and his attorney were excluded from the hearing.

Evidence Code section 915, under which the trial court conducted the hearing, provides: "(a) . . . [T]he presiding officer may not require disclosure of information claimed to be privileged under this division [which includes both the privilege against self-incrimination and the attorney-client privilege] in order to rule on the claim of privilege. . . .

"(b) When a court is ruling on a claim of privilege [concerning] . . . official information and identity of informer . . . or . . . trade secret . . . and is unable to do so without requiring disclosure of the information claimed to be privileged, the court may require the person from whom disclosure is sought or the person authorized to claim the privilege, or both,

---

[3] Counsel's apparent less-than-enthusiastic objection is probably explainable based on the fact that he disagreed with his client about the calling of the witness in the first place. It was counsel's conclusion that, for tactical reason, this witness should not be subpoenaed; however, Manago "demanded" the contrary.

to disclose the information in chambers *out of the presence and hearing of all persons* except the [aforementioned persons] . . . . If the judge determines that the information is privileged, neither he nor any other person may ever disclose . . . what was disclosed in the course of the proceedings in chambers." (Italics added.)

Under subdivision (a) of Evidence Code section 915, the trial court here had the authority to uphold the potential witness's claim of privilege without holding the hearing, based on his lawyer's representation that that is what he advised his client to do. However, counsel for the witness offered to explain to the court his reasons for so advising his client. The court was then put in the position of having to protect the potential witness's privilege against self-incrimination and attorney-client privilege, while affording Manago his right to be present at trial.

"*In camera* proceedings provide an effective means of balancing two competing considerations." (*Herrera v. Superior Court* (1985) 172 Cal.App.3d 1159, 1162 [218 Cal.Rptr. 742]; italics original.) Thus, while section 915, subdivision (b)'s provision for in camera hearings does not *by its terms* apply to anything other than official information, identity of informers, and trade secrets, the Supreme Court has approved its use in conjunction with the patient-psychotherapist privilege. (*In re Lifschutz* (1970) 2 Cal.3d 415, 437, fn. 23 [85 Cal.Rptr. 829 [467 P.2d 557, 44 A.L.R.3d 1].) ■ ■■ ■■ ■ While we do not encourage the use of in camera hearings in matters not strictly provided for by the Legislature, there is precedent for doing so in the narrow confines of this case.[4]

Further, there are situations in the criminal context which are analogous to the proceedings here. The prosecutor is routinely excluded from a *Marsden* hearing. (*People v. Dennis* (1986) 177 Cal.App.3d 863, 871 [223 Cal.Rptr. 236]; *People v. Madrid* (1985) 168 Cal.App.3d 14, 19 [213 Cal.Rptr. 813].) Defense counsel and defendant are both excluded from in camera reviews during *Pitchess* motions when the privacy rights of the officer are at stake. (*Herrera v. Superior Court, supra,* 172 Cal.App.3d at pp. 1162-1163.)

■ Finally, Manago's sole objection below, which can serve here as the only basis for our finding that the trial court committed error, was that the hearing violated his right of confrontation. However, that right only applies

---

[4] In our view, in camera hearings concerning the exercise of the privilege against self-incrimination and of the attorney-client privilege should be limited to a determination whether there is an exception to the privilege or a waiver thereof and whether the exception or waiver depends upon the content of the communication. (*Cornish v. Superior Court* (1989) 209 Cal.App.3d 467, 480 [257 Cal.Rptr. 383].)

to "witnesses against" the claimant. (Cal. Const., art. I, § 15.) Since this witness never testified against Manago, he stands on shaky ground claiming such protection.

In light of the foregoing, we conclude the court did not err in conducting the in camera hearing.

4., 5.*

. . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Dabney, J., and Timlin, J., concurred.

---

*See footnote, *ante,* page 982.