[No. H011011. Sixth Dist. June 7, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
ALEXANDER POPLAWSKI, Defendant and Appellant.

COUNSEL

Stephen Gibbs, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ann K. Jensen and Allan Yannow, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ELIA, J.—Defendant Alexander Poplawski appeals from a judgment of conviction entered upon the jury's verdict finding him guilty of driving under the influence of alcohol with three previous convictions (Veh. Code, §§ 23152, subd. (a), 23175—count 1), and the misdemeanor offense of driving with a suspended or revoked license (Veh. Code, § 14601.2, subd. (a)—count 2). The jury also made a true finding on an enhancement alleging that defendant refused to submit to a chemical test. (Veh. Code, § 23159.) Defendant received a prison term of 16 months on count 1, plus a 90-day sentence on count 2, to be served concurrently with the term imposed on count 1.

The sole issue on appeal is whether the trial court abused its discretion in revoking defendant's pro se status. For reasons stated below, we reverse.

*Background*

As the facts of the underlying offenses are not relevant to the issue raised on appeal, we need only summarize those facts that are relevant to the procedural posture of the case.

On November 30, 1992, defendant appeared in superior court for his arraignment on the above noted charges. Defendant entered not guilty pleas and denied the enhancements.

On January 5, 1993, defendant revealed his dissatisfaction with the public defender and asked the court to grant him permission to represent himself. The court conducted a fairly lengthy interrogation in order to ascertain whether defendant's waiver of counsel was voluntary, knowing and intelligent. The court warned defendant that he was facing a "state level commitment," explained the dangers and disadvantages of self-representation, and informed defendant that, if convicted, despite the "most outrageous and [eg]regious errors," he could not complain of ineffective representation on appeal.

In response to the court's questions, defendant, whose primary language is Polish, asserted he was literate in English. The court next inquired as to defendant's knowledge of the Evidence Code and his ability to make timely objections. In reply, defendant expressed the hope that he would be able to make adequate objections. This prompted the court to warn defendant that he would be trying the case against a skilled prosecutor with a great deal of experience. The court suggested that defendant, having not been trained in the law, would not know how to make objections, handle witnesses, or exclude evidence of his three prior convictions for driving under the influence of alcohol. The court advised defendant that he would be "very foolish" to represent himself and that such a course would most likely be detrimental to defendant's best interests.

Asked whether he knew "how a trial works" as a result of his past experience in the criminal justice system, defendant answered, "No, sir, before I did not speak English and I had some lousy translator or Polish translator. I didn't know what was going on."

In response to this statement, the court made yet another effort to dissuade defendant from representing himself. The court pointed out that because defendant did not have a legal background, he would not know how to examine his prior convictions for constitutional infirmities. Thus, by choosing self-representation, defendant would most likely be relinquishing the right to present an effective constitutional challenge to these priors. The court described this kind of problem as one of the "pitfalls" of self-representation. The court also admonished defendant that he would be expected to abide by the rules of law and courtroom protocol.

When defendant indicated he had "a list of witnesses" he wished to examine, the court responded that it was not responsible for securing the attendance of these witnesses. Defendant complained, "I have witnesses, somebody has to be here." The court explained that if he wished to act as his own lawyer, defendant would have to "take care of [him]self." The court

then sought to reaffirm defendant's desire to proceed without counsel by asking whether he wished to represent himself. When defendant answered affirmatively, the court relieved the public defender and granted defendant's motion for self-representation.

On January 20, 1993, the trial date, defendant appeared for trial assignment before a second judge in the master calendar court. At that time, the following colloquy occurred:

"THE COURT: Okay, sir, you are representing yourself; correct?

"THE DEFENDANT: I have no choice.

"THE COURT: Well, you have a choice. You can hire an attorney if you have funds or you can have an attorney appointed for you.

"THE DEFENDANT: I had [the public defender].

"THE COURT: Right.

"THE DEFENDANT: She didn't try to help me.

"THE COURT: She didn't try to help you?

"THE DEFENDANT: No, not at all.

"THE COURT: Well, you made a motion to represent yourself.

"THE DEFENDANT: Yes, because I have no choice. Somebody don't help me, so I feel I not guilty.

"THE COURT: Well, do you or do you not want an attorney?

"THE DEFENDANT: No.

"THE COURT: I mean, did you make a motion to represent yourself because you thought [the public defender] was not helping you, is that what you did?

"THE DEFENDANT: I don't understand the motion. What does it mean?

". . . . . . . . . . . . . . . . . . . . . . . .

"THE COURT: All right. This matter is back on the after arraignment calendar tomorrow afternoon at 1:30. The Public Defender is appointed. [¶]

This court finds that the defendant is not competent to represent himself and that's based primarily on the language problem that this court has experienced with the defendant. [¶] There's no problem with him, just that the court is not convinced he understands exactly the proceedings here, and that is to his detriment. [¶] So the Public Defender is reappointed."

After answering a question defendant had asked, the following exchange occurred:

"THE COURT: . . . Are you his wife?

"PERSON IN AUDIENCE: Just a friend.

"THE COURT: Do you understand why I can't let him represent himself?

"PERSON IN AUDIENCE: (NODDING IN THE AFFIRMATIVE.)

"THE COURT: Do you speak his language?

"PERSON IN AUDIENCE: (NODDING IN THE AFFIRMATIVE.)

"THE DEFENDANT: Sir, I understand very well. If you try to say that—

"THE COURT: "The legal language, which I've been using, which isn't much, it's my impression that you don't understand. And that's to your detriment. [¶] It would be dangerous for you to represent yourself. It wouldn't be fair to you, because you wouldn't be getting any [breaks] just because you're representing yourself and I can't let you do that.

"THE DEFENDANT: If you say, I believe that. I will try better luck with [the public defender]."

During the brief discussion which followed, defendant explained to the court the source of his dissatisfaction with the public defender, and protested his innocence. The discourse below then transpired:

"THE COURT: . . . The public defender is reappointed. The court finds that he is incompetent to represent himself. I cannot make the *Faretta* finding.

"THE DEFENDANT: That will be a problem, sir.

"THE COURT: I have to overturn the *Faretta* on the comments I made earlier."

Two days later, during jury selection, defendant made a motion pursuant to *People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44], to discharge appointed counsel. After a hearing, the motion was denied and the matter proceeded to trial.

*Discussion*

■ Defendant claims that the judgment must be reversed because the trial court violated his Sixth Amendment right under *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525], to represent himself when it revoked his pro se status. We find this contention to be meritorious.

■ In *Faretta*, the United States Supreme Court held that a criminal defendant who is competent has a constitutionally protected right, under the Sixth and Fourteenth Amendments, to waive the right to counsel and represent himself. (*Faretta* v. *California supra*, 422 U.S. at pp. 819-821 [45 L.Ed.2d at pp. 572-573].) Before a motion for self-representation is granted, however, "the defendant 'should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." ' [Citations.]" (*People* v. *Jones* (1991) 53 Cal.3d 1115, 1141 [282 Cal.Rptr. 465, 811 P.2d 757].) "The right to self-representation, although constitutionally based, 'must be initiated by a timely and *unequivocal* assertion by the defendant. . . .' [Citation.]" (*People* v. *Clark* (1992) 3 Cal.4th 41, 98 [10 Cal.Rptr.2d 554, 833 P.2d 561].) Once such an assertion is made, the court must determine whether the accused has the mental capacity to make a voluntary and intelligent waiver of his right to counsel. (*People* v. *Joseph* (1983) 34 Cal.3d 936, 943 [196 Cal.Rptr. 339, 671 P.2d 843].) " 'If these conditions are satisfied, the trial court must permit an accused to represent himself without regard to the apparent lack of wisdom of such a choice and even though the accused may conduct his own defense ultimately to his own detriment.' [Citations.]" (*Ibid.*)

■ It is well established that "[t]he only [competency] determination a trial court must make when presented with a timely *Faretta* motion is ' "whether the defendant has the mental capacity to waive his constitutional right to counsel with a realization of the probable risks and consequences of his action." [Citations.] It is not, however, essential that defendant be competent to serve as counsel in a criminal proceeding . . . .' " (*People* v. *Joseph, supra*, 34 Cal.3d at p. 943.)

■ Defendant contends that the record of the January 20 proceeding does not provide a proper basis for the revocation of his pro se status.

Although the People make no direct challenge of the initial granting of defendant's *Faretta* motion, they argue that defendant's pro se status was properly revoked because the record of the January 20 proceeding establishes that defendant (1) was either equivocating or being manipulative; and (2) lacked the necessary communicative skills to communicate coherently to the jury and/or to abide by the rules of procedure and courtroom protocol. We disagree.

We are aware of no case, and the People cite none, where the termination of a defendant's pro se status has been upheld under similar circumstances. To the contrary, case law suggests that the only valid reasons for revoking a defendant's pro se status are disruptive in-court conduct or substantial evidence of incompetency, neither of which is present in the case at bench.

*Faretta* itself speaks only of one basis for terminating self-representation: disruption in the courtroom. Footnote 46 in the *Faretta* opinion reads: "We are told that many criminal defendants representing themselves may use the courtroom for deliberate disruption of their trials. But the right of self-representation has been recognized from our beginnings by federal law and by most of the States, and no such result has thereby occurred. Moreover, the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. . . . [¶] The right of self-representation is not a license to abuse the dignity of the courtroom. . . ." (*Faretta* v. *California, supra,* 422 U.S. at pp. 834-835, fn. 46 [45 L.Ed.2d at p. 581].)

In *Ferrel* v. *Superior Court* (1978) 20 Cal.3d 888 [144 Cal.Rptr. 610, 576 P.2d 93], our Supreme Court relied on this language in granting relief to a petitioner whose pro se status was revoked after the county jail suspended certain privileges normally granted to a pro se defendant. Petitioner argued before the high court that termination of the constitutional right of self-representation "is permissible only if an accused deliberately engages in serious and obstructionist misconduct intended to disrupt the trial or abuse the dignity of the courtroom." (*Id.* at p. 891.) The high court agreed: "Since it is manifest that the right to present a defense must necessarily be exercised in court, *we conclude that an accused should only be deprived of that right when he engages in disruptive in-court conduct which is inconsistent with its proper exercise.*" (*Ibid.*, italics added.) The Supreme Court also based its holding on the Sixth Amendment's guarantee of the accused's right to personally present his/her own defense. (*Id.* at pp. 891-892.)

In accordance with this same rationale, *People* v. *Clark, supra,* 3 Cal.4th 41, 115-116, upheld a court's midtrial decision to temporarily revoke the

defendant's self-representation on the ground that the defendant had engaged in "a series of attempts to manipulate or coerce the trial court." (*Id.* at p. 115.) Similarly, in *People* v. *Davis* (1987) 189 Cal.App.3d 1177, 1187 [234 Cal.Rptr. 859], termination of the defendant's pro se status late in the trial was upheld on the basis of the defendant's disruptive trial conduct, including "vituperative statements," "inflammatory editorial comments," and disparaging remarks directed at the court, the prosecutor, and the evidence. (*Id.* at pp. 1199-1201.) The language contained in footnote 46 of the *Faretta* decision formed the basis for the court's ruling. (189 Cal.Ap.3d at p. 1200.)

Although the United States Supreme Court has not addressed the issue of termination of self-representation since its brief discussion in *Faretta,* at least one circuit court has interpreted *Faretta* as placing strict limitations on a court's right to revoke a defendant's self-representation. In *U.S.* v. *Flewitt* (9th Cir. 1989) 874 F.2d 669, the district judge terminated the defendants' pro se status because they would not properly prepare for trial and thus were deemed incapable of " 'further self-representation.' " (*Id.* at p. 673.) The circuit court reversed the judgments of conviction after concluding that the district judge had erred in refusing to allow the defendants to proceed pro se at trial. After analyzing the language contained in footnote 46 of *Faretta,* the court determined that "*Faretta* does not grant the court free rein to terminate a defendant's pro se status based on pretrial conduct of this sort. The defendant's actions in this case did not rise to the level of obstructionist behavior that threatened the dignity of the courtroom. They simply failed to prepare their defense. That alone cannot justify revoking their constitutional right to self-representation." (874 F.2d at p. 676.)

There is also a line of authority which suggests that reconsideration of an accused's pro se status is appropriate where the court is faced with substantial evidence of incompetency. In *People* v. *Teron* (1979) 23 Cal.3d 103 [588 P.2d 773], the court suggested, in dictum, that when evidence of mental incapacity arises at later stages of the proceedings, a court is vested with the discretion to require a psychiatric examination in order to reevaluate the defendant's ability to make a knowing and intelligent decision to represent himself. (23 Cal.3d at pp. 114-115, fns. 6, 7.)

Intermediate appellate courts have acknowledged the *Teron* dictum, but have indicated that a trial court is not required to undertake reconsideration of an accused's pro se status absent substantial evidence of incompetency. (See, e.g., *People* v. *Powell* (1986) 180 Cal.App.3d 469, 479 [225 Cal.Rptr. 703] [reconsideration required only where substantial evidence points to impairment of ability to make knowing and intelligent waiver of right to counsel]; *People* v. *Leever* (1985) 173 Cal.App.3d 853, 864 [219 Cal.Rptr.

581] [reevaluation required where substantial evidence of incompetency to stand trial or inability to make knowing and intelligent waiver of right to counsel]; *People* v. *Clark* (1985) 168 Cal.App.3d 91, 95-96 [213 Cal.Rptr. 837] [court not required to reconsider pro se status where defendant's conduct at trial did not suggest he lacked mental capacity to waive counsel].)

In the instant case, although there was no motion for reappointment of counsel pending before the revoking court, the judge terminated defendant's pro se status. The reasons specified by the court were: (1) "the language problem it had experienced with defendant"; (2) defendant's lack of familiarity with "legal language," as demonstrated by his ignorance of the meaning of the word "motion"; and (3) the court's doubts as to whether defendant had a sufficient understanding of the proceedings. However, as our analysis of pertinent case law establishes, the first two reasons are irrelevant to a decision to revoke a defendant's self-representation.

Even if these factors were relevant, they would not provide a valid basis for terminating defendant's self-representation in this instance. ██ Although the record of both the January 5 and January 20 proceedings reflects various grammatical and syntactical errors on defendant's part, it does not demonstrate that defendant was so deficient in the English language that he could not communicate adequately for purposes of self-representation.[1] To the contrary, defendant had a sufficient knowledge of English so as to understand and respond to the inquiries of each judge in a reasonable manner.

On this point, we find *People* v. *Manago* (1990) 220 Cal.App.3d 982 [269 Cal.Rptr. 819], and *People* v. *Watkins* (1992) 6 Cal.App.4th 595 [8 Cal.Rptr.2d 5], cited by the People, to be inapposite. In *Manago*, the trial court denied a defendant's initial request for self-representation after the defendant exhibited serious difficulty conveying his dissatisfaction with counsel, experienced problems answering the court's questions, and admitted a ninth grade level of reading proficiency. (220 Cal.App.3d at pp. 985-986.)

---

[1]Even if a defendant were not sufficiently fluent in the English language, it is doubtful that the appropriate remedy would be to deny pro se status. (See *U.S.* v. *McDowell* (6th Cir. 1987) 814 F.2d 245, 250 ["To suggest that an accused . . . must . . . possess the ability to converse in English is, we think, to misunderstand the thrust of *Faretta* and the constitutional right it recognized."]; *U.S.* v. *Betancourt-Arretuche* (1st Cir. 1991) 933 F.2d 89, 95 [inability to speak English has not been deemed an insurmountable barrier to pro se representation.]) It is clear, for example, that a defendant who is not fluent in English has no less entitlement to the panoply of procedural rights due a defendant in a criminal prosecution. Rather, the language barrier is surmounted by the appointment of an interpreter, not by the deprivation of the constitutional right at issue. (See generally, *People* v. *Aguilar* (1984) 35 Cal.3d 785 [200 Cal.Rptr. 908, 677 P.2d 1198].)

On appeal, the court rejected defendant's claim that his right to self-representation had been improperly denied. Adopting the reasoning of *People* v. *Burnett* (1987) 188 Cal.App.3d 1314 [234 Cal.Rptr. 67], which in turn, had relied on cases predating the high court's decision in *Faretta,* the *Manago* court held that a defendant is not entitled to proceed in propria persona unless, in addition to having the capacity to waive the right to counsel, " 'he also possesses the mental ability to present a rudimentary defense, keeping in mind, of course, that technical legal knowledge is not required.' [Citation.]" (*People* v. *Manago, supra,* 220 Cal.App.3d at p. 986, italics omitted.) As had *Burnett,* a case involving the application of *Faretta* principles to a defendant who was confined to a mental hospital and had commenced restoration of sanity proceedings (Pen. Code, 1026.2), *Manago* concluded that competence to waive counsel includes not only " 'an appreciation of the risks run by any accused person who exercises the right of self-representation, which is the threshold consideration,' " but also entails " 'an array of basic cognitive and communicative skills relating to the presentation of a defense to criminal charges.' " (220 Cal.App.3d at p. 988.) Based on evidence of the accused's "lack of education, poor reading ability, and obvious inability to effectively communicate his thoughts" (*ibid.*), *Manago* held that the trial court had not abused its discretion in denying the request for self-representation on the ground that the defendant did not possess the ability to present a rudimentary defense. (*Ibid.*)

*People* v. *Watkins, supra,* 6 Cal.App.4th 595, involved a defendant who suffered from a particularly severe speech impediment such that the court reporter was forced to interrupt the hearing on the defendant's motion for self-representation and point out his inability to understand what the defendant had just said. (*Id.* at p. 598.) When the trial court tried to question the defendant about his ability to represent himself, the defendant gave inappropriate responses, bringing up unrelated matters. (*Id.* at pp. 598-599.) Concluding that the defendant had "an enormously difficult time speaking," the trial court denied the request for self-representation. (*Id.* at p. 599.)

On appeal, *Watkins* found no error in the trial court's ruling. Noting the essential role of effective communication in a jury trial, *Watkins* cited *Burnett* and *Manago* as examples of cases which have held that a defendant who seeks self-representation must possess basic cognitive and communicative skills relative to the presentation of a defense to criminal charges. (6 Cal.App.4th 595, 599.) *Watkins* then concluded that defendant's speech impediment was so severe that he could not effectively communicate with the judge and jury, could not abide by rules of procedure and protocol, and was thus unable to represent himself. (*Id.* at p. 600.)

*Manago* and *Watkins* are distinguishable from the case at bench. First, both cases deal with the review of an initial ruling on a defendant's request

to proceed in propria persona. In contrast, the issue here is the propriety of a decision to override another court's determination that defendant was competent to waive the right to counsel and revoke his pro se status—this despite the fact that no motion for reappointment of counsel was pending before the revoking court. Secondly, this case presents no evidence of a physical speech impediment, as in *Watkins*; nor does the record demonstrate the severe communicative difficulties evident in *Manago*.

We also believe that the test approved in *Manago* and averred to in *Watkins*—which imposes an additional requirement that the defendant possess a certain level of communicative skills relative to the presentation of a criminal defense—is not consistent with the United States Supreme Court's latest pronouncement on the right of self-representation.

Recently, in *Godinez* v. *Moran* (1993) 509 U.S. __ [125 L.Ed.2d 321, 113 S.Ct. 2680], the high court revisited the question of competency as it relates to a Sixth Amendment waiver of the right to counsel. The court granted certiorari in order to decide whether the competency standard for pleading guilty or waiving the right to counsel is higher than the competency standard for standing trial. (*Id.* at p. __ [125 L.Ed.2d at pp. 330-331, 113 S.Ct. at pp. 2684-2685].) In *Dusky* v. *United States* (1960) 362 U.S. 402 [4 L.Ed.2d 824, 80 S.Ct. 788], the court had defined the standard for competence to stand trial as a " 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' " and " 'a rational as well as factual understanding of the proceedings against him.' " (*Godinez, supra,* 509 U.S. at p. __ [125 L.Ed.2d at p. 330, 113 S.Ct. at p. 2685].) After analyzing the strategic choices faced by all criminal defendants, irrespective of whether a defendant elects to plead guilty or stand trial, the court held that the *Dusky* standard, if adequate for defendants who plead not guilty, is "necessarily adequate for those who plead guilty." (*Id.* at p. __ [125 L.Ed.2d at p. 332, 113 S.Ct. at p. 2686.])

■ Turning its attention to the standard of competence required for a waiver of the right to counsel, the high court rejected the notion that "a defendant who waives his right to the assistance of counsel must be more competent than a defendant who does not . . . ." (509 U.S. at p. __ [125 L.Ed.2d at p. 332, 113 S.Ct. at p. 2686].) The court also rejected the suggestion "that a higher competency standard is necessary because a defendant who represents himself ' "must have greater powers of comprehension, judgment, and reason than would be necessary to stand trial with the aid of an attorney." ' [Citations.] . . . [T]his argument has a flawed premise; the competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent

himself." (509 U.S. at p. ___ [125 L.Ed.2d at p. 332, 113 S.Ct. at pp. 2686-2687], fn. omitted.) The court reiterated its requirement, first stated in *Faretta*, "that a defendant choosing self-representation must do so 'competently and intelligently' [citation]" (509 U.S. at p. ___ [125 L.Ed.2d at p. 332, 113 S.Ct. at p. 2687]), but again emphasized that the defendant's technical legal knowledge is irrelevant "to the determination whether he is competent to waive his right to counsel . . . . Thus, while '[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts' [citation], a criminal defendant's ability to represent himself has no bearing upon his competence to *choose* self-representation." (*Ibid.*, italics in original.)

In sum, *Godinez* establishes that the only requirements for a valid waiver of the right to counsel are: (1) a determination that the accused is competent to waive the right, i.e. whether he/she has the mental capacity to understand the nature and object of the proceedings against him/her, and (2) a finding that the defendant is able to make an intelligent and voluntary waiver, i.e., whether the defendant understands the significance and consequences of his/her decision, and whether that decision is uncoerced. (509 U.S. at p. ___ [125 L.Ed.2d at pp. 331-332, 113 S.Ct. at pp. 2687-2688].)

■ Based on the foregoing, we find insufficient evidence to support the revocation of defendant's pro se status on the ground that his degree of fluency in English was so impaired that he did not possess the necessary communicative skills required for a waiver of the right to counsel. We also respectfully disagree with the decisions in *Burnett*, *Manago* and *Watkins*, insofar as they purport to impose a stricter standard of competency on the right to undertake one's own defense than is required under *Godinez*. We wish to point out, however, that all three of these cases were handed down prior to the Supreme Court's decision in *Godinez*.

Returning to the reasons cited by the court for its decision to reappoint counsel, we note that the record indicates that defendant's basic proficiency in the English language was not the main catalyst for the revoking court's ruling. Rather, the court's primary concern appears to be defendant's lack of familiarity with legal terminology, as evidenced by his ignorance of the meaning of the word "motion." However, as noted above, a lack of legal expertise or unfamiliarity with technical legal terms is not a proper basis for denying pro se status. (*Godinez* v. *Moran, supra,* 509 U.S. ___, ___ [125 L.Ed.2d 321, 332-333, 113 S.Ct. 2680, 2687]; *People* v. *Joseph, supra,* 34 Cal.3d at p. 943.)

As for the third factor cited by the court, i.e., that defendant was unable to "understand[] exactly the proceedings," there is no evidence to support the

conclusion that defendant was mentally incompetent and thus lacked an understanding of the nature of the proceedings against him. (See Pen. Code, § 1367.) Thus, we assume that the court was referring either to defendant's perceived inability to communicate in English (see above) or to an inability to abide by the rules of procedure or courtroom protocol. Nothing in the present record suggests that the latter factor was a valid basis for terminating defendant's pro se status.

■ Although the *Faretta* court did comment that the "right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law" (*Faretta* v. *California, supra,* 422 U.S. 806, 835, fn. 46 [45 L.Ed.2d 562, 581]), this remark was immediately followed by the admonition that "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.' " (*Ibid.*) The high court's remarks have been construed as meaning "that a defendant cannot claim 'ineffective assistance of counsel' flowing from his failure to follow the rules of procedure or from his misinterpretation of the substantive law. If he chooses to defend himself, he must be content with the quality of that defense." (*U.S.* v. *Flewitt, supra,* 874 F.2d 669, 674.)

Although a pro se defendant must be "able and willing to *abide* by rules of procedure and courtroom protocol" (*McKaskle* v. *Wiggins* (1984) 465 U.S. 168, 173 [79 L.Ed.2d 122, 130, 104 S.Ct. 944]), the term "abide" connotes a willingness "to accept without rejection," "to conform," or "to acquiesce in." (Webster's Ninth New Collegiate Dict. (1984) p. 44.) Indeed, were we to construe *Faretta* and its progeny as requiring the denial of pro se status merely on the basis of an accused's ignorance of the relevant rules of procedure, substantive law, and courtroom protocol, few requests for self-representation would ever be granted.

■ The additional justifications offered by the People are also irrelevant to the decision to terminate self-representation. Assuming *arguendo* that they could be relied upon, they would not provide sufficient support for the revoking court's decision.

First, cases upholding the denial of a request for pro se status on the ground of failure to make an unequivocal request generally involve situations where the defendant expresses a dissatisfaction with counsel which is not accompanied by a direct request for self-representation (see, e.g., *People* v. *Clark, supra,* 3 Cal.4th 41, 98; *People* v. *Wright* (1990) 52 Cal.3d 367, 409-410 [276 Cal.Rptr. 731, 802 P.2d 221]) or where the record shows that the request for pro se status is made in conjunction with an attempt to

manipulate the court into relieving one attorney and appointing another. (See, e.g., *People* v. *Williams* (1990) 220 Cal.App.3d 1165, 1170 [269 Cal.Rptr. 705].)

Here, in addition to complaining about the quality of appointed counsel, defendant, who had already been granted pro se status, clearly stated he did not want an attorney appointed to represent him.[2] Moreover, we see no evidence of gamesmanship or manipulation. The facts of record are more akin to those in *People* v. *Joseph*, *supra*, where the Supreme Court held that the defendant's request for self-representation was not equivocal even though it was preceded by a *Marsden* motion during which the defendant expressed his lack of confidence in appointed counsel. (34 Cal.3d at pp. 940-941, 944, fn. 3.)

Nor does defendant's acquiescence in the court's ruling establish equivocation, as the People suggest. Any failure on defendant's part to argue more vociferously must be attributed to the apparent futility of any further challenge to the court's determination. (Cf. *In re Justin L.* (1987) 188 Cal.App.3d 1068, 1077 [233 Cal.Rptr. 632].)

For the foregoing reasons, we conclude that defendant's pro se status was improperly revoked. ■ Since an error in denying an accused the right to plead his/her own cause is reversible per se (*People* v. *Joseph*, *supra*, 34 Cal.3d 936, 946-948; accord, *People* v. *Ortiz* (1990) 51 Cal.3d 975, 988-989 [275 Cal.Rptr. 191, 800 P.2d 547]; *People* v. *Moore* (1988) 47 Cal.3d 63, 98-99 [252 Cal.Rptr. 494, 762 P.2d 1218]), we must reverse the judgment of conviction.

The judgment is reversed.

Cottle, P. J., and Bamattre-Manoukian, J., concurred.

Respondent's petition for review by the Supreme Court was denied September 14, 1994.

---

[2]When the court asked, "Well, do you or do you not want an attorney?" defendant replied, "No."