[No. C056491. Third Dist. Apr. 29, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
CHICO ROMERO WATTS, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

`Pursuant to California Rules of Court, rule 8.1110, the introduction, part I of the Discussion and the Disposition of this opinion are certified for publication.

## Counsel

Peter Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, and Julie A. Hokans, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

DAVIS, J.*—These three matters proceeded simultaneously in the trial court without formal consolidation. In a joint trial of case Nos. 06-1011 and 06-1047, a jury found defendant Chico Romero Watts[1] guilty of being a convicted felon who possessed a firearm, and who possessed ammunition on two different occasions. (Except as to conduct credits, defendant does not

---

*Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] Defendant indicated in the trial court that his birth name is actually Chico Romero Flood.

claim any error regarding either of these cases. We will therefore only refer to them, when necessary, as the two "possession cases.") In the subsequent trial in case No. 06-1416, a jury convicted defendant of two counts of battery (as lesser included offenses of the charges of rape and sodomy), infliction of corporal injury on a cohabitant, assault likely to result in great bodily injury, false imprisonment by violence, and battery resulting in great bodily injury; it also sustained a number of enhancement allegations. The trial court sustained recidivist allegations (as well as allegations that defendant committed these offenses while on bail for the possession cases) and sentenced defendant to state prison.[2]

On appeal, defendant contends that the court improperly denied his request to represent himself; abused its discretion in ordering physical restraints of his person during trial; failed to instruct sua sponte on jury unanimity in connection with one offense; improperly sustained the enhancement allegations that were the subject of the court trial; and improperly denied him conduct credits for his presentence custody in the possession cases. He also presents a laundry list of misconduct on the part of the prosecutor. We shall affirm and direct the trial court to correct the abstract of judgment. In the published portion of the opinion, we conclude that the trial court properly denied defendant's request to represent himself. This is because his conduct in court prior to trial demonstrated that he was unable to follow procedural rules and legal protocol.

Defendant's arguments on appeal do not implicate the facts of the underlying offenses and we do not find any error requiring us to assess prejudice. Therefore, we will omit them except as is necessary to give context to our discussion.

DISCUSSION

I

Defendant contends that Judge Robert Kaster, who presided over his superior court arraignment in all three cases on November 7, 2006, committed reversible error in denying the timely exercise of his right to self-representation at trial. (*Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d

---

[2] The abstract of judgment is not an accurate summary of the oral pronouncement of judgment (or the minutes). The trial court stayed punishment on four of the convictions and one enhancement. (Pen. Code, § 654 (hereafter, undesignated section references are to the Penal Code).) However, the abstract of judgment does not reflect either the existence or disposition of these convictions. While neither party raises the issue, we must nonetheless direct the court to prepare a corrected abstract of judgment and forward it to the Department of Corrections and Rehabilitation. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185–186 [109 Cal.Rptr.2d 303, 26 P.3d 1040].)

562, 95 S.Ct. 2525] (*Faretta*).) This requires us to begin with a summary of Judge Kaster's previous interactions with defendant before returning to the hearing in November on which defendant relies.

### A

Defendant's initial appearance before Judge Kaster was on May 22, 2006, in the second of the possession cases. In response to the court's questions, defendant stated that it was his intention to retain counsel, but that he could not accomplish this while in jail. With defendant's assent, Judge Kaster appointed the public defender provisionally as counsel in both possession cases until there was a resolution of the question of representation. Two days later, a deputy public defender appeared with defendant before Judge Kaster in the other possession case, at which point defendant suggested that he would be soon retaining private counsel.[3]

While on bail, defendant committed the offenses against the victim in case No. 06-1416. Appearing for his arraignment on these charges on July 11, 2006, defendant said that "Mr. Kolkey out of Oregon"[4] would be appearing for him. The judge presiding denied bail in the matter and reset the arraignment for the following day. At that hearing, however, the judge stated that "Mr. Kolkey has notified the clerk's office that you did not make arrangements as far as he was concerned for him to represent you." A lawyer appearing specially for Mr. Kolkey persuaded the judge to grant a continuance of a few days.

Like Vladamir and Estragon awaiting their Godot,[5] the court granted further postponements of the three cases in anticipation of the appearance of defense counsel.[6] At last, the cases came once again before Judge Kaster on July 25, 2006, where the public defender made a final appearance on behalf of defendant. Defendant said that Attorney Kolkey had asked him to make three requests from the court in his own behalf. "He would like for me to have some law time to approach the law library" and a need for "time with

---

[3] Ultimately, the public defender determined that defendant did not qualify financially for the office's services, and that, in any event, representation of defendant presented a conflict for the office.

[4] Terry Kolkey of Ashland, Oregon.

[5] Beckett, Waiting for Godot: a Tragicomedy in Two Acts (1954) (a play in which two characters wait for someone named Godot, who never arrives).

[6] At one of these hearings, defendant asserted an interest in representing himself, but agreed to consult with the public defender of the day before making his decision. The next day, he was again asserting his intent to engage Kolkey's services and asking for more time to achieve that goal. He also abjured any renewal of a desire to represent himself when he appeared before Judge Kaster on July 25, 2006.

the telephone to reach him"; defendant noted at this point that his "semi-dementia [was] sending [him] downhill." After Judge Kaster asked whether defendant was reasonably likely to retain Kolkey (or another attorney) in the near future, defendant stated that "there [are] a lot of issues that are not yet brought to the surface that have been causing me to create [sic] my first seizure yesterday. I had a seizure in my cell." He also claimed that "they keep putting these people in front of my cell when they let me out to have a conflict or a fight. All these things, they keep me locked down."

Defendant then remembered the third request, which he expressed as his need for medical attention and medication. Judge Kaster told him that he was not going to make any sort of ruling on these requests until there was an indication of Kolkey's intent to appear, and that his cases could not be continued indefinitely. At this point, defendant launched into a complaint that the court "would have to listen to my ex [the victim], and she's got her hand up in the air, and she would like to say something to you because at this particular point, we're going to be finding myself quite incompetent and not able to carry on through things because it seems like [a] . . . biased situation [is] going on here, and I'm not going to be able to do any fair ball[-]playing if I don't have fair cards [sic]. And we probably need to learn how to make motions to have you removed from the bench and have someone else replace and do something here to help me and not smash me because you've already said that my words are probably not credible" (a reference to Judge Kaster's remark to this effect when requesting permission to contact Kolkey directly without defendant as an intermediary).

After interjections from the victim (who apparently was trying to return personal effects to defendant in jail) and defendant, in the course of which Judge Kaster learned that defendant did not have phone privileges because he was on disciplinary lockdown (the most recent incident occurring before the hearing), Judge Kaster announced an intent to appoint counsel for the limited purposes of an inquiry into the competency of defendant to stand trial, and "of trying to ascertain . . . if he is operating under some sort of mental disability . . . short of declaring him . . . incompen[t] to stand trial." Defendant interjected that this would be a waste of time and money.[7]

Two days later, defendant appeared before Judge Kaster. Attorney Kolkey made a telephone appearance. He stated that the funds for a retainer were not presently available, and therefore his potential representation of defendant was uncertain. Judge Kaster reiterated that he wanted to appoint counsel on

---

[7] As Judge Kaster later noted, he was apparently aware of "past cases and issues that have come up relating to [defendant's] competency"; based on this information and the "things that have manifested themselves" in the current proceedings, "certainly it's fair to have a discussion about mental competency to stand trial."

the issues of defendant's competence to stand trial and to represent himself. To this end, he had requested an attorney's presence, who accepted the court's appointment for this task.

In a status report at a hearing a few days later, competency counsel said that he had met with defendant for several hours over the weekend. Defendant unequivocally withdrew any request to represent himself. As for defendant's overall competence to assist in his defense, competency counsel offered a professional opinion that defendant satisfied this standard. Defendant was not a particularly difficult client once he understood what was happening, even if initially upset. Kolkey had several meetings with defendant at the same time, and he had suggested that the court appoint him to represent defendant while working out the finances for either a retainer or for reimbursing the court; he also concurred with competency counsel's conclusions. Judge Kaster indicated his approval of the proposal to appoint Attorney Kolkey.

On August 8, 2006, Kolkey finally appeared in person with defendant before Judge Kaster. Kolkey accepted appointment as counsel in the three pending cases. During the course of discussing the need for medical attention and phone and library access, defendant noted that he had started taking medication for controlling his temper.

The following month, Kolkey notified Judge Kaster that defendant wished to move for the substitution of appointed counsel. (*People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44].) In the course of complaining about his counsel's failure to act on various matters, defendant admitted that he would "lose track here because of organic brain dementia, apnea from Alzheimer's. If you recall, many times we try to do the incompetency hearing but unfortunately the doctors find me very competent. Just the fact that I have organic brain memory lapse and damage from head trauma. Lack of oxygen and blood to the cerebellum. [¶] I also have a cancer. I can't focus all the time and stay functioning." Kolkey noted that defendant wanted his constant presence seven days a week, and wanted his focus to be on defendant's civil legal problems; while defendant communicated clearly and logically for short periods of time, it was difficult to keep him focused on his criminal case.[8] After Judge Kaster found that defendant had failed to establish any inadequacies on the part of Kolkey and rejected defendant's assertion of a conflict of interest, defendant stated, "Then what is it you want me to do? You want him to speak for me? I say he does not represent me, speak for me. I would represent myself before I let him represent me . . . ." Back on the record, the

---

[8] Shortly before the *Marsden* proceedings, Judge Kaster had denied Kolkey's request for appointment of pro bono counsel in defendant's civil matters.

court found substantial evidence to doubt defendant's competence to stand trial, based on all that was in the record and in defendant's history.

On October 13, Judge Kaster found defendant competent to stand trial based on the examiners' reports to that effect. He also determined that defendant had withdrawn his request to represent himself.

On the date of the preliminary hearing in the three cases, defendant appeared with Kolkey before another trial judge acting as the magistrate, and asserted that he had been seeking to retain different counsel, with whom he had recently spoken and about whom he was "90 percent sure he's going to be representing me." Defendant referred to having difficulties cooperating and coordinating with Kolkey (whom he accused of telling lies, refusing to accept his phone calls, and failing to meet with him). The prosecutor objected, noting that several law enforcement officers were present to testify and his own schedule for the following month was already full. The magistrate noted that in-custody preliminary hearings were held only once a week. The magistrate stated that he would not continue the preliminary hearing unless the arrangements with new counsel were past the preliminary stages.

The clerk summoned from another department the attorney defendant had identified. He told the magistrate that after defendant's initial contact three weeks earlier, the retainer agreement was still uncertain. The magistrate denied the request for a continuance to retain new counsel, but held another *Marsden* hearing based on defendant's complaints about Kolkey. After the hearing, the magistrate declined to substitute counsel.[9] Kolkey then appeared for defendant at the preliminary hearings. During the preliminary hearing in case No. 06-1416, the magistrate granted defendant's request to be removed from the courtroom because of his stated inability to restrain himself while listening to testimony of the witnesses.

## B

We now come to the November 7, 2006, hearing on which defendant has narrowly focused his argument. After Kolkey waived formal arraignment, defendant interjected himself into Judge Kaster's discussion with counsel

---

[9] As we do not have any indication that Judge Kaster was privy to the substance of this *Marsden* hearing, we will not attempt to summarize its contents. We simply note that after some 40-odd pages of rambling discourse from defendant (interspersed with occasional responses from Kolkey regarding any allegations that involved him), the magistrate concluded that Kolkey had been providing effective representation to defendant; to the extent there was a difficulty in their relationship, this was "not because of Mr. Kolkey's . . . actions or inactions, but rather because [defendant's] understanding of what the court process is is not, perhaps, as thorough or sophisticated as it might be."

about the scheduling of the cases. He claimed that he had not spoken with Kolkey since the preliminary hearings, contended that he did not know "if we even need the jury trials on some of this stuff," and asserted that he "would like to . . . have another *Marsden* hearing and try to represent myself . . . ." He reiterated his complaints about his inability to understand or communicate as a result of his disabilities and his lack of access to a telephone, and claimed the need for an attorney who could understand him.

Judge Kaster noted that the record showed that there had been two previous *Marsden* hearings. When he asked defendant if that was his intention, defendant answered, "That's in part." After once again asserting his desire for more frequent access to communication and alluding to his disabilities and his memory problems, he said, "I'm asking if I can represent myself, and I'm also asking if I can also have some assistance to some law library and telephone service, sir."

Judge Kaster found that the request for a *Marsden* hearing "was very equivocal" and denied it on that basis, subject to renewal in light of anything new. As for the *Faretta* request, "the proceedings . . . in these cases, including ones that I have specifically presided over and also [the preliminary hearings], indicate[] to me that there is simply no way that [defendant] . . . would be granted the right to represent himself. I am absolutely not going to grant that. And it's not a matter of competency, it's a matter of whether or not [he] will conform sufficiently[] his conduct[] to the rules of procedure and courtroom protocol. That if he represented himself, I'm just absolutely satisfied that the proceedings would be unacceptably disrupted, and there's no way justice could be accomplished."

Defendant continued to interject himself at length into the proceedings over the next few pages of transcript. After Judge Kaster admonished him not to interrupt the conversation with the attorneys one more time, defendant nevertheless asserted that he was "representing [himself]," at which point Judge Kaster had the bailiff remove defendant from the courtroom.

After defendant's removal, Judge Kaster stated, "it's this kind of behavior that has occurred today and has occurred . . . [in] other court proceedings that is so . . . disruptive that if [defendant] were to be his own counsel . . . there is no way that any kind of a meaningful trial could proceed. [¶] And we have been through proceedings . . . to determine his competency. Two psychologists . . . told the court that he is competent to stand trial. I think the standard for competency to stand trial and the standard for competency to waive

counsel are the same.[10] But that's not the issue that I'm looking at here. [¶] The issue that I'm looking at is whether or not [defendant] would be sufficiently in control of the situation to be able to be his own lawyer without having the proceedings . . . in total shambles without any direction whatsoever and without any kind of justice being accomplished."

## C

Defendant contends that he made a timely request for self-representation. He argues that Judge Kaster lacked discretion at that point to do anything other than grant the request because his behavior at the November 7 hearing was only in response to the denial of this right, and did not in any way obstruct the orderly conduct of *trial*. This takes too narrow a view of the law and the facts.

We review the *entire* record de novo to determine whether a defendant validly exercised the constitutional right to have " 'a fool for a client.' " (*Faretta, supra*, 422 U.S. at p. 852 (dis. opn. of Blackmun, J.) [reciting the old cliché]; see *People v. Dent* (2003) 30 Cal.4th 213, 218 [132 Cal.Rptr.2d 527, 65 P.3d 1286]; *People v. Koontz* (2002) 27 Cal.4th 1041, 1070 [119 Cal.Rptr.2d 859, 46 P.3d 335]; *People v. Marshall* (1997) 15 Cal.4th 1, 24–25 [61 Cal.Rptr.2d 84, 931 P.2d 262] (*Marshall*).) As a result, while we will give deference to a trial court's characterization of defendant's statements, this does not bind us. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1087 [74 Cal.Rptr.2d 121, 954 P.2d 384]; *Marshall, supra*, 15 Cal.4th at p. 25; *People v. Clark* (1992) 3 Cal.4th 41, 116 [10 Cal.Rptr.2d 554, 833 P.2d 561].)

■ The right to self-representation is unconditional when a defendant makes a reasonably timely request (whereas an untimely request is subject to the trial court's discretion based on prescribed factors). (*People v. Windham* (1977) 19 Cal.3d 121, 128–129 & fn. 5 [137 Cal.Rptr. 8, 560 P.2d 1187].) The request, however, must be unequivocal and must not be an ill-considered decision that is a function of annoyance or frustration. (*Marshall, supra*, 15 Cal.4th at pp. 21–22.) Moreover, a defendant requesting the right of self-representation must possess the ability and willingness "to abide by rules of procedure and courtroom protocol." (*McKaskle v. Wiggins* (1984) 465 U.S. 168, 173 [79 L.Ed.2d 122, 104 S.Ct. 944].)[11]

Defendant is incorrect in asserting that only his conduct *at trial* could have warranted the denial of his *Faretta* request. It is also relevant that before trial

---

[10] Judge Kaster was correct. (*Godinez v. Moran* (1993) 509 U.S. 389, 400–401 [125 L.Ed.2d 321, 113 S.Ct. 2680]; *People v. Welch* (1999) 20 Cal.4th 701, 732 [85 Cal.Rptr.2d 203, 976 P.2d 754].)

[11] As noted above, Judge Kaster used this exact phrase in his denial of the November 7 request.

defendant continuously manifested an inability to conform his conduct to procedural rules and courtroom protocol. It would be a nonsensical and needless waste of scarce judicial resources to proceed to trial when, as here, defendant has shown by his conduct during pretrial proceedings that he is unable to conform to procedural rules and protocol.

*Ferrel v. Superior Court* (1978) 20 Cal.3d 888 [144 Cal.Rptr. 610, 576 P.2d 93] is not apposite, as it involves *extrajudicial* conduct resulting in the revocation of pro se jail privileges, which did not justify the revocation of the right of self-representation. *Moon v. Superior Court* (2005) 134 Cal.App.4th 1521, 1530–1531 [36 Cal.Rptr.3d 854], is also inapposite because the record lacked *any* evidence of disruptive behavior on the part of that defendant other than as a frustrated response to the court's erroneous denial of his request. Equally off point is *People v. Poplawski* (1994) 25 Cal.App.4th 881, 889–891 [30 Cal.Rptr.2d 760] (and the federal case it cites), which hold that an inability to represent one's self *effectively* is not within the definition of conduct that is obstructive or threatens the dignity of the proceedings, and therefore cannot justify a denial of a *Faretta* request.

As our lengthy recitation of the facts leading up to the November 7 hearing demonstrates, defendant repeatedly requested to represent himself whenever Judge Kaster did not rule as he desired. He would then withdraw the request once the heat of the moment passed. He does not identify any point in the record after the November 7 hearing that shows any interest on his part in renewing his request for self-representation. Thus, on this record, it is questionable whether defendant's request on November 7 was unequivocal and not a function of pique.

■ Nonetheless, like Judge Kaster, we find dispositive defendant's demonstrated inability to conform his behavior to the rules of procedure and courtroom protocol. Defendant was unable to control himself even when acting under the guidance of counsel. We therefore conclude there was a proper basis to deny his *Faretta* request.

*II–VI*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed. The trial court is directed to prepare a corrected abstract of judgment that conforms to our directions in footnote 2 of this

---

[*]See footnote, *ante*, page 621.

opinion, *ante*, and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

Scotland, P. J., and Cantil-Sakauye, J., concurred.

A petition for a rehearing was denied May 19, 2009, and appellant's petition for review by the Supreme Court was denied August 19, 2009, S173579.